DWYER v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   May 3, 1909.)

No. 1,606.

1. CRIMINAL LAW (§ 950*)—NEW TRIAL—APPLICATION—JURISDICTION—FEDERAL DISTRICTS—DIVISION.

Act July 5, 1892, c. 145, § 6, 27 Stat. 73, re-enacted June 1, 1898, c. 369, § 2, 30 Stat. 424 (U. S. Comp. St. 1901, p. 344), relating to the divisional jurisdiction of the District Court in Idaho, provides for the holding of terms at different places in the divisions of the district, and declares that all suits, prosecutions, process, recognizances, bail bonds, and other things pending in or returnable to the court are transferred to, and shall be returnable to, and have force in, the respective terms created by the act in the same manner and with the same effect as they would have had if the existing statute had not been passed. *Held*, that such provision had no relation to the jurisdiction of the divisions of the court, and hence that the court sitting in one division had jurisdiction to hear and determine a motion for a new trial in a criminal case tried in another division.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 950.*]

2. CRIMINAL LAW (§ 1156*)—WRIT OF ERROR—NEW TRIAL—DISCRETION.

It is within the sound discretion of a federal court to grant or refuse accused a new trial, the exercise of which discretion cannot be reviewed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3067–3071; Dec. Dig. § 1156.*]

3. CRIMINAL LAW (§ 1059*)—NEW TRIAL—DENIAL—DISCRETION—EXCEPTIONS.

Where a federal District Court excludes affidavits submitted by accused in support of a motion for a new trial, and exercises no discretion with respect to such motion because it erroneously supposed it had no jurisdiction to determine the same where it was then sitting, its action was preserved by an exception for review.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1059.*]

4. PERJURY (§ 13*)—SUBORNATION OF PERJURY—NONREQUIRED OATH.

Since an entryman who has made his preliminary sworn statement concerning the bona fides of his application and the absence of any contract or agreement by which the title would inure to the benefit of another is not required to make an additional oath to such facts on final proof, any regulation of the Commissioner of the General Land Office to the contrary notwithstanding, suborning of perjury cannot be laid on the alleged suborning of an entryman to swear falsely concerning the bona fides of his application in his final proof.

[Ed. Note.—For other cases, see Perjury, Dec. Dig. § 13.*]

5. CRIMINAL LAW (§ 1172*)—ERRONEOUS INSTRUCTIONS—PREJUDICE.

In a prosecution for suborning of perjury the indictment contained six counts, the first three alleging suborning of an entryman to swear falsely concerning the bona fides of his entry in his preliminary affidavits, and the last three alleged suborning to swear falsely in his final proofs with reference to the same land.   Notwithstanding the last three counts

were insufficient, the court charged that they were connected with the same timber claims referred to in the first and third counts, and that the jury should remember that they concerned the testimony on the same points involved in the first count, made at the time of final proof. An exception was taken with reference to the fourth, fifth, and sixth counts on the ground that the matters alleged therein were immaterial, which exception the court allowed. *Held*, that a conviction on all but the second count, which was not submitted to the jury, on which accused was sentenced to pay a fine of $500 and costs and be imprisoned for 18 months, was not sustainable on the theory that the judgment did not exceed that prescribed for a single offense, and was therefore supported by the first count alone.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1172.*]

In Error to the District Court of the United States for the District of Idaho.

The plaintiff in error in this case was indicted in the District Court of the United States for the Northern Division of the District of Idaho for subornation of perjury in proceedings relating to the entry of public lands under the timber and stone act (Act June 3, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901. p. 1545]). The indictment contains six counts. The first three charge the defendant with suborning an entryman to swear falsely in his sworn statement or preliminary affidavit that he was applying to purchase the lands referred to therein in good faith for his own use and benefit, and that he had not made any contract or agreement by which the title he might acquire thereto would inure to the benefit of any other person. The counts differ only as to the name of the entryman. The first count referring to Hiram F. Lewis, the second to Charles Carey, and the third to Guy L. Wilson. The last three counts each charged the defendant with suborning one of the three entrymen referred to in the first three counts to swear falsely in his final proofs that he had not made any contract by which the title to the land he was applying to purchase would inure to the benefit of any other person except himself; that he was making the entry in good faith for his own use and benefit, and not for the use or benefit of any other person; that no other person, firm, or corporation had any interest in the said entry, in the lands, or the timber thereon.

The case was tried at the October term, 1906, of the District Court for the Northern Division held at Moscow, and on November 24, 1906, the plaintiff in error was found guilty on all but the second count, which was withdrawn from the consideration of the jury by the United States attorney. Judgment was entered upon the verdict at the May term of the Northern division at Moscow on June 17, 1907. The judgment was general in its nature, reciting that, the defendant having been convicted of the crime of subornation of perjury, he should pay a fine of $500 and costs and be imprisoned in the penitentiary for 18 months. Notice of intention to move for a new trial was served and filed June 15, 1907, while the court was in session at Moscow. On September 3, 1907, the time in which to file bill of exceptions and affidavits on motion for a new trial was by order of the judge of the court extended to November 1, 1907, and pursuant to stipulation of counsel the judge on November 2, 1907, ordered the United States to have until December 2, 1907, in which to propose and serve amendments to defendant's proposed bill of exceptions. The bill of exceptions was settled and allowed by the judge of the court, and made a record in the cause on December 12, 1907.

The motion for a new trial was presented to Judge Dietrich at Boise City on December 13, 1907, at which time the District Court for the Central Division was in session and the District Court for the Northern Division had adjourned. Judge Dietrich declined to entertain or pass upon said motion or give consideration to any of the errors alleged to have been committed in the trial of said case, or any alleged errors set forth in the bill of exceptions filed in the case, or make any other or further order relative to said motion; said action being taken solely for the reason that in the opinion of said judge

---

the motion was presented to him at chambers, that for that reason he was without authority or power to act. The judge was in fact holding the District Court for the District of Idaho, but he was holding the court in the Central division, and not in the Northern division, where this case was tried, and the judgment entered against the plaintiff in error. The action of the court in declining to entertain or pass upon the motion of defendant for a new trial was made the subject of a supplemental bill of exceptions signed December 14, 1907. The case is here upon writ of error.

Forney & Moore and Geo. W. Tannahill, for plaintiff in error.

Robert T. Devlin, U. S. Atty., William R. Harr, Atty. Department of Justice, and C. H. Lingenfelter, U. S. Dist. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). It is assigned as error that the trial court refused to entertain the motion of plaintiff in error for a new trial, and refused to consider the errors set forth in the bill of exceptions. The refusal was based upon the fact that the defendant had been indicted, tried, and convicted in the District Court for the Northern Division held at Moscow, and the court for that division had adjourned, and the motion for a new trial was presented to Judge Dietrich at Boise City, Idaho, where he was holding the District Court for the Central Division. Section 1 of the act of July 5, 1892, c. 145, 27 Stat. 72 (U. S. Comp. St. 1901, p. 342), provides:

"That the state of Idaho shall constitute one judicial district."

Section 3 of the act of June 1, 1898, c. 369, 30 Stat. 423 (U. S. Comp. St. 1901, p. 343), provides:

"That for the purpose of holding terms of the District Court, said district is divided into three divisions, to be known as the Northern, the Central, and the Southern divisions."

The territory included in the three divisions is described in the section, and it is provided that the court for the Northern division must be held at the town of Moscow, the court for the Central division must be held at Boise City, and the court for the Southern division must be held at Pocatello. In section 6 it is provided:

"That the terms of the District Court for the District of the State of Idaho shall be held at the town of Moscow, beginning on the second Monday of May and the fourth Monday of October in each year; at Boise City, beginning on the second Monday of March and the second Monday of September in each year; and at the town of Pocatello beginning on the second Monday of April and the first Monday of October in each year; and the provision of statute now existing for the holding of said courts on any day contrary to the provisions of this act is hereby repealed; and all suits, prosecutions, process, recognizances, bail bonds, and other things pending in or returnable to said court are hereby transferred to, and shall be made returnable to, and have force in, the said respective terms in this act provided, in the same manner and with the same effect as they would have had had said existing statute not been passed."

In Rosencrans v. United States, 165 U. S. 257, 17 Sup. Ct. 302, 41 L. Ed. 708, the Supreme Court referring to Act Cong. Feb. 22, 1889, c. 180, 25 Stat. 676, providing that the state of Montana should constitute one judicial district, and Act July 20, 1892, c. 208, 27 Stat. 252, dividing the district into two divisions, and the court referring also to

section 563 of the Revised Statutes (U. S. Comp. St. 1901, p. 455), giving the District Courts jurisdiction "of all crimes and offenses cognizable under the authority of the United States, committed within their respective districts," and section 629, par. 20, providing that the Circuit Courts should have "concurrent jurisdiction with the District Courts of crimes and offences cognizable therein," said:

"These statutes declare the general rule, that jurisdiction is coextensive with district. That being the general rule no mere multiplication of places at which courts are to be held or mere creation of divisions nullifies it. Indeed, the place of trial has no necessary connection with the matter of territorial jurisdiction."

The court proceeds to consider the provisions of the Revised Statutes and acts of Congress relating to the jurisdiction of the Circuit and District Courts and the trial of offenses within the districts. Some of these acts, the court says, increase in a district the places of trial, and in others subdivide the district into divisions. "The former have no effect on the matter of jurisdiction. Some of these latter acts specifically limit the jurisdiction in criminal actions of the courts held in a division to the territory within that division; as, for instance, in respect to Alabama Act May 2, 1884, c. 38, 23 Stat. 18 (U. S. Comp. St. 1901, p. 318), Lousiana Act Aug. 8, 1888, c. 789, 25 Stat. 388 (U. S. Comp. St. 1901, p. 365), Michigan Act June 19, 1878, c. 326, 20 Stat. 175 (U. S. Comp. St. 1901, p. 370), Ohio Act June 8, 1878, c. 169, 20 Stat. 101 (U. S. Comp. St. 1901, p. 401), Act Feb. 4, 1880, c. 18, 21 Stat. 63 (U. S. Comp. St. 1901, p. 403), Tennessee Act June 11, 1880, c. 203, 21 Stat. 175 (U. S. Comp. St. 1901, p. 415), Texas Act March 1, 1889, c. 333, 25 Stat. 783, 786, while, on the other hand, some contain no such provision, as in the case of Minnesota Act April 26, 1890, c. 167, 26 Stat. 72 (U. S. Comp. St. 1901, p. 374)—Post v. United States, 161 U. S. 583, 585, 16 Sup. Ct. 611, 40 L. Ed. 816—though this was changed by the subsequent act of July 12, 1894, c. 132, 28 Stat. 102 (U. S. Comp. St. 1901, p. 376)—Post v. United States, 161 U. S. 583, 16 Sup. Ct. 611, 40 L. Ed. 816."

The distributing provision in the Alabama act for criminal offenses is in the following language:

"That all offences hereafter committed in either of said divisions shall be cognizable and indictable within the division where committed."

In the other acts the provision is in substantially the same language.

In the light of this legislation, the court turns to Act July 20, 1892, c. 208, 27 Stat. 252, creating the Southern Division of the District of Montana, giving the Circuit and District Courts sitting at Butte (the place in the Southern division where these courts were to be held) "jurisdiction and authority in all civil actions, pleas or proceedings, and in all prosecutions, informations, indictments or other criminal or penal proceedings conferred by the general laws upon the Circuit and District Courts of the United States." The court says:

"If the section stopped here, there would be no question. The mere creation of a division does not disturb the general jurisdiction over the district. And, in addition, the language just quoted makes an affirmative grant to the courts, when sitting at Butte, of all the jurisdiction, civil and criminal, vested in the

Circuit and District Courts; that is, a jurisdiction coextensive with the district. The latter part of the section causes all the doubt in respect to the matter. In that are found two provisions: One that, where one or more of the defendants in any civil cause reside in one division and one or more in another, the plaintiff may institute his action in either division. This, of course, has no bearing on the question of jurisdiction in criminal cases. The second, that the act should not affect the jurisdiction of the court as to actions, prosecutions, and proceedings already begun; that they should proceed where they were commenced, with a proviso that the court might in its discretion transfer all such actions, etc., as might properly be begun in the new division to the court in that division."

"This language," the court says, "is broad enough to include criminal actions. Too much stress should not be placed on the word 'properly.' The creation of divisions and the multiplication of places of trial are for the convenience of litigants, bringing the trial nearer to them and their witnesses. There is a manifest propriety, even when no jurisdictional necessity, in conducting criminal prosecutions as near to the place of the offense as possible. The idea of the vicinage is familiar to criminal law. And all that Congress may have intended by this second division was to make it clear that the court should have the power to transfer to this new division any pending proceeding which might with more convenience and therefore propriety be prosecuted at the place at which in the new division the sessions of the court were to be held."

After further discussing the language of this last proviso and .the intention of Congress relative to the distribution of the territorial jurisdiction of the courts in the divisions of the district, the court says:

"We cannot assume that because Congress in creating some divisions distributed jurisdiction it meant, in creating other divisions, to also so distribute it, and, when we find that in some cases of division it distributed the jurisdiction and in other cases not, we are not justified in assuming that in this case it intended a distribution which it did not in terms make, simply because of the use of language which somewhat implies that a distribution had already been made."

The court accordingly held that an indictment found in one division could be remitted to the other division for trial.

The only provision in the Idaho act relating to the divisional jurisdiction of the district is in section 6 of Act July 5, 1892, c. 145, 27 Stat. 72, 73, re-enacted in section 6 of Act June 1, 1898, c. 369, 30 Stat. 423, 424 (U. S. Comp. St. 1901, p. 344), as follows:

"And all suits, prosecutions, process, recognizances, bail bonds, and other things pending in or returnable to said court are hereby transferred to and shall be made returnable to and have force in the said respective terms in this act provided, in the same manner and with the same effect as they would have had had said existing statute not been passed."

This provision has reference only to the change made in the terms for holding the District Court,. and not to the jurisdiction of the divisions of that court, and specifically refers to pending cases. It is less a distributing provision for future cases than the Montana act, and has nothing of the divisional jurisdiction provided in the acts of Congress where such a division is clearly intended. In Logan v. United States, 144 U. S. 263, 297, 12 Sup. Ct. 617, 36 L. Ed. 429, it was held that an act of Congress requiring courts to be held at three places in a judicial district and prosecutions for offenses committed in certain counties to be tried and writs and recognizances to be returned at each place did not affect the power of the grand jury sitting at either place

to present indictments for offenses committed anywhere within the district.

Act July 20, 1882, c. 312, 22 Stat. 172 (U. S. Comp. St. 1901, p. 349), dividing the state of Iowa into two judicial districts, and these districts into three divisions each, and Act Feb. 24, 1891, c. 282, 26 Stat. 767 (U. S. Comp. St. 1901, p. 352), creating the Cedar Rapids division in the Northern division of the state, have provisions for the continuance of causes in the corresponding divisions of the two districts "with the same force and effect as though originally commenced therein."

In United States v. Kessel (D. C.) 63 Fed. 433, 434, the attorney for the United States moved the court that certain indictments returned by the grand jury in the Cedar Rapids division of the Northern district should be set down for trial at Dubuque, in the Eastern division of the same district. The court, in passing upon this motion, said:

"In the progress of time it has become customary for Congress to divide the several judicial districts into two or more divisions, and to provide for holding terms of court in the several divisions. The creation of these divisions does not, however, create new districts, nor establish new or additional district courts. Unless there is some special provision in the act of Congress creating such divisions in a given case, the District Court, in its jurisdiction over criminal cases, remains unaffected; and that jurisdiction, under section 563, Rev. St. (U. S. Comp. St. 1901, p. 455), is territorially coextensive with the district. * * * Thus it is clear that the grand jury which met at Cedar Rapids had full authority to present indictments against the defendant, Kessel, for any offenses he might have committed within the territorial limits of the Northern district of Iowa."

We are clearly of the opinion that the District Court sitting at Boise City had authority to pass upon the motion for a new trial in this case, and, as it appears that it was convenient for counsel on both sides to present the motion at that place and applied to the court to do so, it was the duty of the court to have heard and determined the motion on its merits.

It is an established law in the courts of the United States that to grant or refuse a new trial rests in the sound discretion of the court to which the motion is addressed, and that the result cannot be made the subject of review upon a writ of error. Henderson v. Moore, 5 Cranch, 11, 3 L. Ed. 22; Kerr v. Clampitt, 95 U. S. 188, 24 L. Ed. 493; Newcomb v. Wood, 97 U. S. 581, 24 L. Ed. 1085. But where the trial court excludes affidavits and exercises no discretion with respect to the matters therein stated, the action of the court is preserved by exception for review by the appellate court. Mattox v. United States, 146 U. S. 140, 147, 13 Sup. Ct. 50, 36 L. Ed. 917; Odgen v. United States, 112 Fed. 523, 525, 50 C. C. A. 380, 382. In the latter case the Circuit Court of Appeals for the Third Circuit said:

"It is not disputed that in the courts of the United States the allowance or refusal of a new trial rests in the sound discretion of the court to which the application is addressed, and that the result cannot be made the subject of a review by writ of error. The gravamen of the case, however, made by the plaintiff in error, is that the court below declined to exercise its discretion at all in refusing the motion for a new trial, and excluding from its consideration the reasons filed in support thereof. That the court did not exercise any discretion in respect to the motion for a new trial clearly appears from

the statements of the bill of exceptions, as above quoted from the record. Taking this to be a fact, as we must, the only question that remains is whether such refusal by the trial court to exercise its discretion at all can be reviewed by writ of error. To this question we are constrained, by reason and authority, to give an affirmative answer. The right to move for a new trial, and to have that motion considered upon the reasons presented for it, is an absolute one, and the granting or refusal thereof does not rest in the discretion of the court. The making of such a motion and the filing of reasons therefor is a regular and orderly step in the litigation of the cause, and is sanctioned by long-established and uniform practice of the courts, and, where not the subject of a special rule, the settled practice of common-law courts in this country and in England has prescribed the time when such motion can be made, and the period within which reasons therefor must be filed. To refuse leave to make or file such a motion and the reasons therefor is the denial of a right, for which the party aggrieved may seek redress in a reviewing court, when such refusal is properly excepted to, and made, by bill of exceptions, a part of the record in the case."

The objection to the action of the court in refusing to hear the motion for a new trial having been preserved by an exception duly taken by the plaintiff in error, the judgment must be reversed.

It is further objected to the judgment in this case that the fourth, fifth, and sixth counts of the indictment are based upon regulations contained in section 11 of a circular issued by the Commissioner of the General Land Office on July 11, 1889, relating to final proof in proceeding to obtain title to public lands under the homestead, desert land, and other laws. The allegation of each of the counts to which reference is made is as follows:

"And the proceeding to which the said oath was taken as aforesaid was then and there a proceeding in which a law of the United States and the rules and regulations of the Department of the Interior and of the General Land Office then and there authorized such oath to be administered."

In the case of Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278, the Supreme Court held that an entryman who had made his preliminary sworn statement concerning the bona fides of his application and the absence of any contract or agreement by which the title which he might acquire from the United States would inure to the benefit of any person except himself is not required to make an additional oath to such facts on final proof, and a regulation of the Commissioner of the General Land Office exacting such additional sworn statement at the time of the final hearing is invalid. Under the authority of this case, it is clear that the judgment, so far as it is based upon the fourth, fifth, and sixth counts, cannot be sustained. But it is contended by the United States that the judgment being general in its nature, and not exceeding that prescribed for a single offense, the first and third counts charging subornation of perjury with respect to proceedings under section 2 of the timber and stone act (Act June 3, 1878, c. 151, 20 Stat. 89 (U. S. Comp. St. 1901, p. 1545), relating to the preliminary proof, are sufficient to support the judgment, and the case of Claasen v. United States, 142 U. S. 140, 12 Sup. Ct. 169, 35 L. Ed. 966, is cited as authority upon that proposition. But in that case the court mentions the fact that the record did not "show that any instructions at the trial were excepted to." In the present case the court

instructed the jury specifically with respect to the charges contained in the fourth, fifth, and sixth counts. The court told the jury that:

"They (the fourth, fifth, and sixth counts) are connected with the same timber claims referred to in the counts above named (the first and third), and they concern testimony upon the same points involved in the first count, but made at the time of their final proof. You will remember that."

The court then explains the charges contained in these counts in detail. To the charge of the court with reference to these counts exception was taken as follows:

"We call attention to that portion of the court's charge with reference to the fourth, fifth, and sixth counts in the indictment, and except to the same on the ground that the matters set forth in each of these counts in the indictment are immaterial, and are not based upon any law of the United States, and that perjury cannot be predicated upon the same, and that the same are collateral matters and tend to prejudice the defendant in the minds of the jury."

The exception was allowed by the court.

It follows that the judgment was erroneous as to the fourth, fifth, and sixth counts, and should be reversed. The judgment is accordingly reversed, with instructions to the court below to grant a new trial.