## SHEPARD v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 4, 1916.)

No. 2669.

1. COMMERCE ←→4—OFFENSES—STATUTE.
   Act Jan. 17, 1914, c. 9, § 1, 38 Stat. 275, declares that after April 1, 1909, it shall be unlawful to import into the United States opium in any form, but that opium and derivatives thereof other than smoking opium may be imported for medicinal purposes. Section 2 provides that if any person shall fraudulently or knowingly import or bring into the United States any opium or derivative contrary to law, or shall receive, conceal, buy, or sell, or in any manner facilitate, the transportation, concealment, or sale thereof, knowing it to have been imported contrary to law, such opium shall be destroyed and the offender punished, and that whenever a defendant is shown to have, or have had, possession of such opium, such possession shall be deemed sufficient evidence to authorize conviction, unless explained. Section 3 declares that on and after July 1, 1913, all smoking opium, or opium prepared for smoking, found shall be presumed to have been imported, after the 1st day of April, 1909, and the burden shall be on the accused to rebut such presumption. *Held*, that the act is not unconstitutional in so far as it makes penal the keeping and transportation of opium within the limits of the states as being in conflict with the police powers of the states and not within the powers delegated to the United States.

   [Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 3, 5; Dec. Dig. ←→4.]

2. CRIMINAL LAW ←→1156(2)—MOTION FOR NEW TRIAL—DISCRETION OF COURT.
   The denial of a motion for new trial is within the discretion of the court, and where there is evidence to support the verdict, the denial of the motion is not reviewable on error.

   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3068; Dec. Dig. ←→1156(2).]

3. CONSPIRACY ←→43(6)—INDICTMENT—SUFFICIENCY—UNCERTAINTY.
   In a prosecution under Pen. Code (Act March 4, 1909, c. 321, 35 Stat. 1096) §. 37 (Comp. St. 1913, § 10201), for conspiring to violate Act Jan. 17, 1914, § 2, providing that if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any opium contrary to law, or shall receive, conceal, buy, sell, or facilitate the transportation, concealment, or sale of such opium after importation, knowing it to be imported contrary to law, shall be punished, the indictment charged that defendants conspired to commit against the United States the offense of fraudulently and knowingly importing and bringing into the United States from a foreign country, the Republic of Mexico, opium prepared for smoking and to receive, conceal, buy, sell, and facilitate transportation, concealment, and sale of such opium knowing it to be imported contrary to law, which offense is defined by Act Jan. 17, 1914. *Held*, that in view of the specific reference of the indictment to the act, the fact that it omitted the words "after importation," preceding the words "knowing the same to have been imported contrary to law," did not render it uncertain on the theory that, defendants having admitted they were engaged in dealing in opium in Mexico, it did not appear whether the offense was committed in the United States or in Mexico.

   [Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 86, 91; Dec. Dig. ←→43(6).]

4. CRIMINAL LAW ←→823(15)—TRIAL—INSTRUCTIONS.
   Where the court charged that in criminal cases, guilt must be established beyond a reasonable doubt, and that before a conviction can be rendered

each juror must be able to say, in answer to his individual conscience, that he has in his mind arrived at a fixed opinion that the defendant is guilty, an instruction that juries are impaneled for the purpose of agreeing on a verdict if they can conscientiously do so, and that a juror should not hesitate to sacrifice his opinions when convinced they are erroneous, though in so doing he defers to the opinions of others, is not objectionable as failing to impress on the jury that each juror should be individually convinced beyond a reasonable doubt of accused's guilt before convicting.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1992–1994, 3158; Dec. Dig. ☞823(15).]

5. CRIMINAL LAW ☞823(12)—TRIAL—INSTRUCTIONS.
A charge that the jury should exercise their power to judge the credibility of witnesses, not arbitrarily, but with legal discretion and in subordination to the rules of evidence, is not objectionable as failing to define legal discretion, where the court proceeded to state the rules of law usually given to guide the jury in judging the credibility of witnesses.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1992–1994, 3158; Dec. Dig. ☞823(12).]

6. CRIMINAL LAW ☞823(14)—TRIAL—INSTRUCTIONS.
Where the court charged that accused could not be convicted unless found guilty beyond a reasonable doubt from all the evidence, an instruction that, where the evidence is entirely circumstantial, yet is not only consistent with the guilt of accused, but inconsistent with any other rational conclusion, the jury should convict is not objectionable as failing to state that each essential of the crime should be established.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1992–1994, 3158; Dec. Dig. ☞823(14).]

7. CRIMINAL LAW ☞308—TRIAL—PRESUMPTION OF INNOCENCE.
While accused at the beginning of the trial is presumed to be innocent, yet whenever the proof shows beyond a reasonable doubt his guilt, then the presumption of innocence disappears from the case.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 731; Dec. Dig. ☞308.]

8. CRIMINAL LAW ☞789(12)—TRIAL—INSTRUCTIONS—REASONABLE DOUBT.
An instruction, defining a reasonable doubt as a doubt based on reason and which is reasonable in view of all of the evidence, and directing jurors to acquit unless they should have an abiding conviction of accused's guilt, such as a person would be willing to act upon in the more weighty and important matters relating to one's own affairs, is correct, and not open to objection that it should have been charged that the abiding conviction which is necessary to justify a verdict of guilty should be such a conviction as one would be willing to act upon in the most important questions of life.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1846–1849, 1917, 1960, 1967; Dec. Dig. ☞789(12).]

9. CONSPIRACY ☞48—TRIAL—INSTRUCTIONS.
Where the indictment clearly charged the overt acts as following the conspiracy and done to effect its object, an instruction that it is not necessary for the government to prove that all of the defendants committed overt acts, but if there was a conspiracy as charged and the defendants were parties and any one of the overt acts was committed, defendants should be convicted, is not objectionable as failing to state that the overt act charged must have followed the conspiracy in point of time.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 108–111; Dec. Dig. ☞48.]

**10. CRIMINAL LAW ☞762(2)—TRIAL—INSTRUCTIONS—ADMISSIONS.**

In a prosecution for conspiracy, where one of the defendants admitted the conspiracy and the commission of overt acts, plaintiff in error, another of the defendants, cannot complain of an instruction that, so far as such defendant was concerned, he had admitted there was a conspiracy as charged, and that he was a party to it.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1731, 1758; Dec. Dig. ☞762(2).]

**11. INDICTMENT AND INFORMATION ☞168—CONJUNCTIVE ALLEGATIONS—CONVICTION.**

Where an indictment, charging conspiracy to violate Act Jan. 17, 1914, denouncing an offense with respect to the importation of opium, which may be committed in various manners, charged conjunctively the several acts specified by the statute, a conviction may be had upon proof of any one of such acts; for where a penal statute mentions several acts disjunctively and prescribes that each shall constitute the same offense and be subject to the same punishment, an indictment may charge any or all of such acts conjunctively as constituting a single offense.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 534; Dec. Dig. ☞168.]

**12. CRIMINAL LAW ☞829(1)—TRIAL—INSTRUCTIONS—REFUSAL.**

The refusal of requested instructions covered by those given is not error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011; Dec. Dig. ☞829(1).]

In Error to the District Court of the United States for the Southern Division of the Southern District of California.

Frederick M. Shepard and another were convicted of the crime of conspiracy to import into the United States smoking opium in violation of law, and the named defendant brings error. Affirmed.

Indictment under section 37 of the federal Penal Code (Act of March 4, 1909; 35 Stat. pt. 1, pp. 1088, 1096), charging F. M. Shepard and A. C. Brown with the crime of conspiracy to import into the United States from Mexico 80 cans of smoking opium, and to receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such opium, in violation of the act of January 17, 1914 (38 Stat. pt. 1, p. 275). Judgment upon a verdict of guilty against each of the defendants. Frederick M. Shepard, one of the defendants, sues out the present writ of error.

In July, 1914, plaintiff in error was retained as attorney at law to represent and to obtain bail for certain persons who were lodged in the county jail in Los Angeles, charged with the crime of conspiracy to import opium into the United States from Mexico in violation of the laws of the United States. One A. C. Brown was also employed by the same persons for the purpose of obtaining such bail. In connection with their efforts to secure bail, and at the instance of their clients, plaintiff in error and Brown proceeded to Tia Juana, just over the boundary line in the republic of Mexico, where they found 40 five-tael cans of smoking opium which had been concealed by their clients. This opium Brown proceeded to dispose of in Tia Juana for either $32 or $34 per can, making a total sum of either $1,280 or $1,360, and, after deducting his proportion of the proceeds in accordance with a previous understanding with their clients, Brown delivered the balance of $1,000 to plaintiff in error.

A second lot of 53 or 54 cans, concealed in the same vicinity, was searched for, but not found by the plaintiff in error. It appears, however, that a quantity of opium was found in that neighborhood by the defendant Brown and sold.

A third lot was found by the plaintiff in error and the defendant Brown, concealed near Jacumba, in Mexico, about 76 miles east of San Diego, near the boundary line. The defendant Brown subsequently brought this lot to or near Los Angeles, in California, where it was concealed for a time.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Plaintiff in error and Brown were thereafter jointly indicted under section 37 of the federal Penal Code for conspiracy to import into the United States from the republic of Mexico this last-mentioned lot of 80 cans of smoking opium, and to receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such opium, in violation of the act of January 17, 1914. It is charged as overt acts in the furtherance of the conspiracy that the plaintiff in error and the defendant Brown went from San Diego to Jacumba, Mexico, and that the defendant Brown brought the 80 cans of smoking opium from Jacumba, Mexico, to a point near Los Angeles, Cal. To this indictment defendants Shepard and Brown interposed their several demurrers, which were overruled by the court. On the trial of the case, the jury returned a verdict of guilty as against each of the defendants. Defendant Shepard thereafter moved for a new trial upon certain grounds specified in the motion, and moved in arrest of judgment upon the ground that the act of January 17, 1914, is unconstitutional and void, both of which motions were denied by the court and the defendants each sentenced to imprisonment for the term of one year. Defendant Shepard thereafter sued out the present writ of error.

Charles J. Kelly and S. M. Johnstone, both of Los Angeles, Cal., for plaintiff in error.

Albert Schoonover, U. S. Atty., of Los Angeles, Cal., M. G. Gallaher, Asst. U. S. Atty., of Fresno, Cal., and J. Robert O'Connor, Asst. U. S. Atty., of Los Angeles, Cal.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). 1. The indictment in this case contains but one count. The errors assigned relate to the overruling of a demurrer to the indictment, the giving of certain instructions to the jury, the refusal of the court to give certain instructions requested by the defendant, the denial of the motion of defendant for a new trial, and the denial of a motion in arrest of judgment.

Section 37 of the Penal Code of the United States (Act of March 4, 1909, c. 321; 35 Stat. 1088, 1096) provides:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than ten thousand dollars or imprisoned not more than two years, or both."

[1.] Section 1 of the act of January 17, 1914, c. 9 (38 Stat. 275, 276) provides:

"That after the first day of April, nineteen hundred and nine, it shall be unlawful to import into the United States opium in any form or any preparation or derivative thereof: Provided, that opium and preparations and derivatives thereof, other than smoking opium or opium prepared for smoking, may be imported for medicinal purposes only, under regulations which the Secretary of the Treasury is hereby authorized to prescribe, and when so imported shall be subject to the duties which are now or may hereafter be imposed by law."

Section 2 of the same act provides:

"That if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any opium or any preparation or derivative thereof contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such opium or preparation or derivative thereof after importation, knowing the same to have been imported contrary to law, such opium or preparation or derivative

thereof shall be forfeited and shall be destroyed, and the offender shall be fined in any sum not exceeding $5,000 nor less than $50 or by imprisonment for any time not exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have, or to have had, possession of such opium or preparation or derivative thereof, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant shall explain the possession to the satisfaction of the jury."

Section 3 provides:

"That on and after July first, nineteen hundred and thirteen, all smoking opium or opium prepared for smoking found within the United States shall be presumed to have been imported after the first day of April, nineteen hundred and nine, and the burden of proof shall be on the claimant or the accused to rebut such presumption."

The motion in arrest of judgment is based upon the objection that the last-named act is unconstitutional in so far as it attempts to make penal the keeping and transportation of opium within the limits of a state, being in conflict with the police power of the state and not within the powers delegated to the United States. In Brolan v. United States, 236 U. S. 216, 222, 35 Sup. Ct. 285, 59 L. Ed. 544, this objection to the statute was held by the Supreme Court to be so utterly devoid of merit as to be frivolous.

[2] 2. The denial of a motion for a new trial in the federal courts is within the discretion of the court, and where that discretion has been exercised and there is evidence to support the verdict, as in this case, the motion is not reviewable on a writ of error. This has been held so often that we are surprised that the denial of the motion continues to be presented as a ground for the reversal of a judgment. Dwyer v. United States, 170 Fed. 160, 165, 95 C. C. A. 416; Hedderly v. United States, 193 Fed. 561, 571, 114 C. C. A. 227; Pickett v. United States, 216 U. S. 456, 461, 30 Sup. Ct. 265, 54 L. Ed. 566; Holmgren v. United States, 217 U. S. 509, 521, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778.

[3] 3. The demurrer to the indictment interposed by the plaintiff in error was for uncertainty in charging the offense which it is alleged the defendants conspired to commit. Section 2 of the act of January 17, 1914, upon which this indictment is based, provides:

"That if any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any opium * * * contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such opium * * * after importation, knowing the same to have been imported contrary to law," etc.

The indictment charges that the defendants conspired to commit an offense against the United States, to wit:

"The offense of fraudulently and knowingly importing and bringing into the United States, and assisting in so doing, from a foreign country, to wit, the republic of Mexico, opium prepared for smoking, and to receive, conceal, buy, sell and facilitate the transportation, concealment and sale of such opium prepared for smoking, knowing the same to have been imported contrary to law, which said offense is defined by the Act of January 17, 1914."

The indictment does not follow the letter of the statute, but omits the words, "after importation," preceding the words, "knowing the same to have been imported contrary to law."

It is argued that this omission is material and important, particularly in this case, where it is admitted that the plaintiff in error and the defendant Brown were engaged in dealing in opium in Mexico in a manner substantially in the words of the statute; that instead of omitting these words from the indictment, the words of the statute should have been amplified so that it should have been distinctly charged (if such was the purpose of the indictment) that the offense which the defendants conspired to commit was to receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of opium in the United States, after its importation into the United States, knowing the same to have been imported into the United States contrary to law; that in the absence of such a direct and specific charge, the indictment was uncertain and ambiguous, and did not sufficiently apprise the defendants of the offense which they were charged to have conspired to commit, and was not sufficiently definite to make a conviction or acquittal under the indictment available as a plea in bar to a subsequent prosecution. The plaintiff in error suggests hypothetical cases coming within the wording of the indictment where the agreement might be to receive, conceal, etc., opium in some foreign country (as, for example, Mexico), knowing it to have been imported into that foreign country contrary to law. Again, it is argued that a person might knowingly buy, sell, and facilitate the transportation and sale of opium in a foreign country after such opium had been imported into the United States, and while it still remained in the United States, having been imported contrary to law.

We are of the opinion that the indictment does not cover the hypothetical cases suggested, and that no essential element of certainty is wanting in its form or substance to charge the offense provided in the statute. The remaining statutory words which have been followed in the indictment clearly describe the offense as a conspiracy to import and bring into the United States opium contrary to law, and to receive, conceal, buy, sell, and facilitate the transportation, concealment, and sale of such opium. What opium? Opium which the defendants have conspired to import and bring into the United States contrary to law. This allegation can only refer to opium after its importation into the United States. The indictment charges that the defendants conspired to commit "an offense against the United States," and thereupon proceeds to describe the offense, charging the acts following the importation of opium into the United States contrary to law. Moreover, the offense is charged as being defined by the act of January 17, 1914. This, we think, fixes the charge in the indictment with absolute certainty. We are of the opinion that the demurrer was properly overruled.

[4] 4. The court instructed the jury that:

"Juries are impaneled for the purpose of agreeing upon a verdict, if they can conscientiously do so. It is true that each juror must decide the matter for himself, yet he should do so only after a consideration of the case with his fellow jurors, and he should not hesitate to sacrifice his view or opinions of the case when convinced that they are erroneous, even though in so doing he defer to the views or opinions of others."

It is objected to this instruction that it fails to state that each juror individually should be convinced beyond a reasonable doubt that the defendant is guilty before he can vote to convict. The court subsesequently stated that:

"In criminal cases guilt must be established beyond a reasonable doubt, and the burden of establishing such guilt rests upon the government. The law does not require of the defendant that he prove himself innocent, but the law requires the government to prove the defendant guilty, in the manner and form as charged in the indictment, beyond a reasonable doubt, and unless they have done so, the jury should acquit. Before a verdict of guilty can be rendered, each member of the jury must be able to say, in answer to his individual conscience, that he has in his mind arrived at a fixed opinion, based upon the law and the evidence of the case, and nothing else, that the defendant is guilty."

This was a very clear instruction that the individual judgment of each juror was required.

It is further objected to the instruction that its wording impressed upon the jury to an undue and improper extent their duty to agree upon a verdict. We do not so read the instruction. It is well within the discretion of the trial court to urge a jury to agree upon a verdict, and the court may properly advise the jury that, while they should not surrender any conscientious opinion founded on the evidence, they should lay aside all pride of judgment, and that they should consider their differences in a spirit of fairness and candor, with an honest desire to arrive at the truth and with the view of arriving at a verdict. Allen v. United States, 164 U. S. 492, 501, 17 Sup. Ct. 154, 41 L. Ed. 528; 38 Cyc. 1853, 1854. We are of the opinion that the instruction is correct, and that the objection made to it is without any substantial merit.

[5] 5. It is objected that the court instructed the jury that their power to judge of the credibility of witnesses was not arbitrary, but was "to be exercised with legal discretion, and in subordination to the rules of evidence," without defining what was "legal discretion," leading the jury to infer that "legal discretion" is something different from and more restricted than ordinary discretion. The distinction is hypercritical. The court proceeded to correctly state the rules of law usually given by courts to juries with respect to the credibility of witnesses. By these rules, the jurors were made to clearly understand what was meant by the exercise of "legal discretion" in weighing the testimony of witnesses.

[6] 6. The court instructed the jury that:

"Where the evidence is entirely circumstantial, yet is not only consistent with the guilt of the defendant, but inconsistent with any other rational conclusion, the law makes it the duty of the jury to convict."

It is objected to this instruction that it failed to state that each circumstance essential to the conclusion of guilt must be proved to the same extent as if the whole issue rested upon the proof of such essential circumstance, and that the hypothesis of guilt should flow naturally from all the circumstances and be consistent with them all. The instructions of the court with respect to a reasonable doubt covered this objection, and, in particular, where the court instructed the jury that:

"You cannot find the defendant guilty unless from all the evidence you believe him guilty beyond a reasonable doubt."

[7] 7. The court instructed the jury that:

"The law presumes a defendant charged with a crime innocent until proven guilty beyond a reasonable doubt. If you can reconcile the evidence before you upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and in that case find the defendant not guilty. You are further instructed that you cannot find the defendant guilty unless from all the evidence you believe him guilty beyond a reasonable doubt.

"The court further charges you that a reasonable doubt is a doubt based on reason, and which is reasonable in view of all the evidence. And if, after an impartial comparison and consideration of all the evidence, or from a want of sufficient evidence on behalf of the government to convince you of the truth of the charge, you can candidly say that you are not satisfied of the defendant's guilt, you have a reasonable doubt; but if, after such impartial comparison and consideration of all the evidence, you can truthfully say that you have an abiding conviction of the defendant's guilt, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt"

It is objected to this instruction that the court did not instruct the jury that the defendant is presumed to be innocent throughout the entire proceedings and even after all the evidence is produced and until a final ballot is taken by the jury at the conclusion of their deliberations. The instruction given by the court is correct. "A party starts into a trial, though accused by the grand jury of a crime, with the presumption of innocence in his favor. That stays with him until it is driven out of the case by the testimony." Jones on Evidence, vol. 1, § 12d. In Allen v. United States, 164 U. S. 492, 500, 17 Sup. Ct. 154, 41 L. Ed. 528, the Supreme Court stated the rule to be:

"Whenever the proof shows, beyond a reasonable doubt, the existence of a crime, then the presumption of innocence disappears from the case." The court "gave all the definition of reasonable doubt which a court can be required to give, and one which probably made the meaning as intelligible to the jury as any elaborate discussion of the subject would have done." Dunbar v. United States, 156 U. S. 185, 199, 15 Sup. Ct. 325, 39 L. Ed. 390.

[8] It is further objected that the jury were instructed that the "abiding conviction" which the jury should have to justify a verdict of guilty would be such a conviction as the jury would be willing to act upon in the more weighty and important matters relating to their own affairs, instead of the most important matters of life. In Hopt v. Utah, 120 U. S. 430, 7 Sup. Ct. 614, 30 L. Ed. 708, the trial court gave this identical instruction, to which there was an exception. The Supreme Court approved the instruction, saying:

"The instruction in the case before us is as just a guide to practical men as can well be given; and, if it were open to criticism, it could not have misled the jury, when considered in connection with the further charge that if they could reconcile the evidence with any reasonable hypothesis consistent with the defendant's innocence, they should do so, and in that case find him not guilty. The evidence must satisfy the judgment of the jurors as to the guilt of the defendant, so as to exclude any other reasonable conclusion."

This is precisely the qualification which the trial court in this case had given the jury.

[9] 8. It is objected that the instruction of the court with respect to the crime of conspiracy did not state that the overt act charged must have been shown to have followed the conspiracy in point of time, and, further, that it did not require the jury to find that the overt act was done to effect the object of the conspiracy.

The following instruction given by the court we think covers this objection:

"In this connection you are charged that it is not necessary for the government to prove that all of the defendants committed some overt act, but if you find beyond a reasonable doubt that there was a conspiracy as charged in the indictment, and that the defendants now on trial were parties to that conspiracy, and that any one of the overt acts as charged in the indictment was committed as therein alleged, you should find the defendants guilty as charged in the indictment."

The indictment clearly charged the overt acts as following the conspiracy and done to effect the object of the conspiracy.

[10] 9. The court charged the jury:

"In so far as the defendant Brown is concerned, he admits in his testimony that there was a conspiracy as charged in the indictment, and that he was a party to it."

It is objected that this instruction—

"intimated to the jury that the testimony of Brown, being an admission by him that there actually was a conspiracy, should be treated by the jury as the absolute truth, and that all that remained for them to decide was whether or not the plaintiff in error was a party to this conspiracy."

As Brown admitted the conspiracy and he and another had testified to the overt acts in furtherance of the conspiracy, the plaintiff in error was not prejudiced by the instruction, and the intimation was not error. Simmons v. United States, 142 U. S. 148, 155, 12 Sup. Ct. 171, 35 L. Ed. 968; Allis v. United States, 155 U. S. 117, 123, 15 Sup. Ct. 36, 39 L. Ed. 91.

[11] 10. The court called the attention of the jury to the offense charged in the indictment against the defendants as a conspiracy to commit various acts in violation of the act of January 17, 1914, in the importation, transportation, and concealment of opium. These acts are in the statute connected together by the disjunctive conjunction "or," and in the indictment by the conjunctive conjunction "and." The court instructed the jury that, while the indictment so charged—

"yet the jury would be authorized to return a verdict of guilty if they believed from the evidence beyond a reasonable doubt that the defendants did, at the time and in the manner as described in the indictment, willfully, knowingly, and unlawfully conspire to fraudulently and knowingly import or bring into the United States, or assist in so doing, opium prepared for smoking, or to receive or conceal or facilitate the transportation or concealment of opium prepared for smoking, knowing the same to have been imported contrary to law."

It is objected that the indictment charged but one offense, while the instruction permitted the jury to consider the indictment as charging the defendants with conspiracy to commit several separate and distinct offenses, and authorized them to find the defendants guilty

if they believed that defendants conspired to commit any one or more of such separate and distinct offenses. The instruction was correct. This charging of offenses in the conjunctive which are in the statute in the disjunctive is in accordance with a well-known rule of criminal pleading. In Bishop on Statutory Crimes, § 244, it is stated:

"The reader remembers the proposition that every case against a defendant must come within all the words of the statute. But this proposition, let us here add, is subject to the qualification that, if there are independent clauses connected by the conjunction 'or,' no more need be done than satisfy one of the alternatives. In such circumstances the indictment either sets out the offense as covered by all the clauses, usually connecting the parts of the allegation by the conjunction 'and' where 'or' is found in the statute, or it states only what falls within one clause, at the election of the pleader; and, whichever form is adopted, the proof need cover only so much of the allegation as constitutes a complete offense."

In 22 Cyc. 380, the rule is stated as follows:

"It is a well-settled rule of criminal pleading that when an offense against a criminal statute may be committed in one or more of several ways, the indictment may, in a single count, charge its commission in any or all of the ways specified in the statute. So where a penal statute mentions several acts disjunctively and prescribes that each shall constitute the same offense and be subject to the same punishment, an indictment may charge any or all of such acts conjunctively as constituting a single offense."

The indictment conforms to this rule, and is therefore not subject to the objection urged by the plaintiff in error.

[12] 11. A number of errors are assigned because of the refusal of the court to give certain instructions as requested by the plaintiff in error. We have examined these instructions, and find that, where they correctly state the law, they had been given in substance by the court. Where they were not so given, they were properly refused, because they did not state the law correctly. We think we have sufficiently reviewed all these questions in what has already been said.

The judgment of the court below is affirmed.