COLBECK et al. v. UNITED STATES. TIPTON v. SAME. CRONIN et al. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. September 23, 1926.)

Nos. 7208-7210.

1. Post office ⬳44.

Possession and concealment of stolen mail are separate offenses, within Criminal Code, § 194 (Comp. St. § 10364).

2. Post office ⬳48(6).

Counts charging possession of contents of 79 registered letters and packages and possession of contents of 337 registered letters and packages held to charge distinct offenses, within Criminal Code, § 194 (Comp. St. § 10364).

3. Criminal law ⬳1032(5)—In prosecution for possessing stolen registered mail, challenge, for first time on appeal, that there was no allegation that mail was stolen, held to come too late.

In prosecution for possessing stolen registered mail, challenge, on appeal, that there was no allegation that mail was stolen, held to come too late, where count was not challenged at trial, either by demurrer, motion to quash or motion in arrest.

4. Witnesses ⬳357.

Inquiry as to reputation of impeached witness for honesty and veracity held too broad to be basis for inquiry as to whether impeaching witness would believe him under oath.

5. Criminal law ⬳1170½(1).

Exclusion of impeaching evidence held not prejudicial, in view of full disclosure to jury of impeached witness' criminal record.

6. Post office ⬳50.

Evidence held sufficient to take case to jury in prosecution of several defendants for receiving, concealing, and possessing stolen registered mail, in view of Criminal Code, § 332 (Comp. St. § 10506).

7. Post office ⬳50.

Evidence held sufficient to take to jury question whether defendants were guilty of separate offenses of concealing and possessing stolen registered mail.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

William P. Colbeck and others were convicted of receiving, concealing, and possessing stolen registered mail, under Criminal Code, § 194, and they bring error. Affirmed.

William Baer, Thomas Harvey, and J. E. Carroll, all of St. Louis, Mo., for plaintiffs in error Colbeck et al.

Patrick H. Cullen and Abbott, Fauntleroy, Cullen & Edwards, all of St. Louis, Mo., for plaintiff in error Tipton.

Verne Lacy, of St. Louis, Mo., for plaintiffs in error Cronin et al.

14 F. (2d)—51

Horace L. Dyer, Sp. Asst. U. S. Atty., of St. Louis, Mo.

Before LEWIS and KENYON, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. The eight plaintiffs in error, called defendants, in these three cases, were jointly indicted, tried and convicted of offenses defined by Section 194, Criminal Code (Comp. St. § 10364). The indictment contained fourteen counts, but nol. pros. was entered of counts 4 to 11 inclusive. The first three counts charged defendants with feloniously taking, on April 2, 1923, United States mail pouches and their registered contents from one in lawful custody thereof, on all of which all defendants were found not guilty. The last three counts, 12, 13 and 14, charged defendants with feloniously receiving, concealing and possessing, on or about April 18, 1923, registered letters and packages contained in said mail pouches, on all of which all defendants were found guilty and each sentenced to five years' imprisonment on each count, the terms of confinement to run consecutively.

The undisputed evidence shows that a United States postal clerk, acting in discharge of his daily duties, left the main post-office in the City of St. Louis at 6 o'clock a. m. April 2, 1923, in charge of sixteen pouches of registered mail for distribution to different mail stations in the city. Each pouch was locked and they were all placed in a motor truck, the door of which was then locked. The postal clerk sat in front by the driver of the truck. Stops were made at two stations and seven of the pouches were delivered. While on the way to the next station armed men wearing masks held up the postal clerk and driver and carried away the nine remaining pouches of registered mail, some of them containing bonds and securities of great value.

We quote that part of Section 194 on which counts 12, 13 and 14 are based. After denouncing the theft of any mail as a criminal act it reads thus:

"Whoever shall receive, conceal, or aid in receiving, or concealing, or shall unlawfully have in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been so stolen, taken, embezzled, or abstracted, shall be fined not more than two thousand dollars, or imprisoned not more than five years, or both."

The twelfth count charges that before and on or about the 18th day of April, 1923, the defendants, naming them, and others, naming them, "knowingly and feloniously did receive and conceal, and aid in receiving and concealing, the contents of 79, more or less, registered letters and packages, which had theretofore been stolen from the mails of the United States, and from a pouch theretofore securely closed and locked by lock M9545, Rotary No. 113, and which said registered letters and packages had theretofore been registered and deposited in the mails of the United States, to be carried and delivered by the Post Office Establishment of the United States. The said defendants (naming them), then and there, at the time of so unlawfully, knowingly and feloniously receiving and concealing, and aiding in receiving and concealing said contents of said registered letters and packages, well knew that said registered letters and packages had theretofore been so stolen, contrary," etc.

The thirteenth count charges that before and on or about the 18th day of April, 1923, the defendants, naming them, and others, naming them, "did then and there unlawfully have in their possession the contents of 79, more or less, registered letters and packages which had theretofore been stolen from the mails of the United States, and from a pouch theretofore securely closed and locked by lock M9545, Rotary No. 113, and which said registered letters and packages had theretofore been registered and deposited in the mails of the United States, to be carried and delivered by the Post Office Establishment of the United States;" that defendants, naming them, and others, naming them, "unlawfully, knowingly and feloniously did unlawfully have in their possession the contents of said registered letters and packages, well knowing that said registered letters and packages had theretofore been so stolen, contrary," etc.

The fourteenth count charges that before and on or about the 18th day of April, 1923, the defendants, naming them, and others, naming them, "unlawfully, knowingly and feloniously did unlawfully have in their possession, the contents of 337, more or less, registered letters and packages, containing securities, bonds and notes, of the face value of $2,437,374.30, more or less, which said registered letters and packages had theretofore been registered and deposited in the mails of the United States, to be carried and delivered by the Post Office Es-

tablishment of the United States;" that defendants, naming them, and others, naming them, "unlawfully, knowingly, and feloniously did unlawfully have in their possession the contents of said registered letters and packages, well knowing that said registered letters and packages, and their contents, had theretofore been so stolen, contrary," etc.

This is the mail that was stolen on April 2d.

[1, 2] It is contended here that these three counts charge one and the same offense, that the same evidence was offered to sustain each of them, that defendants could not be punished separately on each count and that the court erred in adjudging that they be separately punished on each count and that the confinement so adjudged on each count be served consecutively. We think it entirely clear from the language of the section of the Code that both possession and concealment of United States mail which has been stolen are made criminal offenses if the person or persons possessing or concealing the same knew at the time that the same had been stolen. Possessing a thing is a different act from concealing the same thing. The former means to hold the thing, the latter to hide the thing. One may hold to-day and hide to-morrow. We, therefore, are of opinion that counts 12 and 13 charge separate and different offenses. Likewise as between counts 13 and 14. Count 13 charges the possession of the contents of 79 registered letters and packages, and count 14 charges possession of the contents of 337 registered letters and packages. The proof required to sustain the charge in the thirteenth count would not be sufficient to sustain the charge in the fourteenth count. It would require additional and different proof to sustain the latter than that required to sustain the former. Ebeling v. Morgan, 237 U. S. 625, 35 S. Ct. 710, 59 L. Ed. 1151; Morgan v. Devine, 237 U. S. 632, 35 S. Ct. 712, 59 L. Ed. 1153; Gavieres v. United States, 220 U. S. 338, 31 S. Ct. 421, 55 L. Ed. 489. Nor does it appear that all of the 79 letters and packages mentioned in the thirteenth count were included in the 337 letters and packages mentioned in the fourteenth count.

[3] It is further contended that defendants could not be punished on count 14 because it fails to state facts sufficient to constitute an offense punishable under the laws of the United States, in that it fails to affirmatively allege that the letters and packages were stolen from the United States mail. It is different from the two other counts in that

respect. They each make the specific allegation, while this one does so, if at all, only by way of recital, or inferentially. None of the counts were challenged in the usual and well known way, by demurrer, by motion to quash, or motion in arrest. They now make the challenge in this court. We think it comes too late. The defect was cured by verdict. McGrath v. United States (C. C. A.) 275 F. 294, 299, 300; Serra v. Mortiga, 204 U. S. 470, 27 S. Ct. 343, 51 L. Ed. 571; United States v. Ball, 163 U. S. 662, 16 S. Ct. 1192, 41 L. Ed. 300; Shepard v. United States, 236 F. 73, 149 C. C. A. 283. The court had jurisdiction of the parties and of the offense which the pleader sought to charge in the fourteenth count. There could have been no doubt in the minds of defendants and their counsel that by the fourteenth count it was the purpose and intention of the pleader to charge the same kind of an offense as that charged in the thirteenth count. They were put in jeopardy and could not be again prosecuted for that offense, whether acquitted or convicted. Evidence was adduced by the prosecution on the theory that the count was not defective. On that evidence and the instructions of the court the defendants were found guilty on the fourteenth count. This is a court for the correction of errors, and the trial court was not asked by any of the recognized modes to pass upon the sufficiency of this count. We think that issue cannot be raised for the first time here. We do not mean to say that in our opinion the count is subject to the criticism. It clearly advised the defendants that the 337 letters and packages had been in the United States mail and that they knew it had been stolen.

It is also contended that there should be a reversal because the court erred in its instruction to the jury on the subject of reasonable doubt. The particular respect in which it is claimed the court erred on that subject is that it charged the jury that a reasonable doubt is a doubt based on reason and which is reasonable in view of all the evidence. If the court had stopped there the contention would be a serious one. But that was not all of the instruction. Taking the court's entire charge on that subject it is the same in substance as the instruction given in Hopt v. Utah, 120 U. S. 430, 7 S. Ct. 614, 30 L. Ed. 708, which the Supreme Court held did not constitute reversible error.

[4] It is further contended that the court erred in not permitting an impeaching witness to answer the question whether he would believe the impeached witness under oath. The point arose in this way; the impeaching witness was asked:

"Among the people with whom he associated, and among the people with whom he did business, do you know his general reputation for truth and veracity, honesty and veracity? A. Yes, sir.

"Q. Is it good or bad? A. Bad.

"Q. I will ask you the question, judging by that reputation that you have described, would you believe George V. Halliday under oath?"

To which last question the court sustained an objection. The authorities are not in accord. There is a line, both text and cases, holding that the question is a proper one; and there is a line, both text and cases, holding that it is improper. 40 Cyc. pp. 2632–2635. 1 Greenleaf on Evidence (15th Ed.) § 461, says that in the English courts the question is considered a proper one, but its propriety has of late been questioned and the weight of authority is now against permitting the witness to testify as to his own opinion. The Supreme Court, in Teese v. Huntingdon, 23 How. 2, 16 L. Ed. 479, discussed, without deciding, the proposition. It reviewed at some length the authorities. If there be an intimation of its opinion it was seemingly in accord with Mr. Greenleaf. That was the view taken by the Seventh Circuit in Colbeck v. United States (C. C. A.) 10 F.(2d) 401, 403. It should be said that the dissent in Gaines v. Relf, 12 How. 472, 553, 13 L. Ed. 1071, appears to accept the English rule as the law. This circuit has not passed on the question. The Fifth Circuit, in Held v. United States, 260 F. 932, 171 C. C. A. 574, holds the inquiry to be proper. The reason for the rule as applied in the English courts is said to be convincingly stated in Hamilton v. People, 29 Mich. 185. It will be noticed that in that case the first question must be strictly confined to reputation for truth and veracity. That is also said to be the requirement in Teese v. Huntingdon, supra.

[5] The general moral character of the witness to be impeached is not a subject of inquiry. Here the inquiry was not so confined. The inquiry was as to the general reputation of the witness for honesty and veracity; and on that basis the witness was then asked if he would believe Halliday under oath. We are inclined to think the first question was too broad as a basis on which to rest the second question. David Harum's moral carelessness in trading hors-

es would not be a safe premise from which in part to reach the conclusion that he would testify falsely. But Halliday's criminal record was fully disclosed to the jury. The jurors had all the incriminating facts in his past life, and it may be appropriately said, as was said in Colbeck v. United States, supra:

"It is not perceived how his standing as a witness could be further impaired by allowing witnesses to express their opinion that they did not regard him worthy of belief. No substantial injury was done plaintiffs in error by this ruling."

[6] The proof consisted of circumstances, also of incriminating statements made by some of the defendants, and facts from which it could be reasonably inferred that some of the defendants on the next day after the mail was stolen had possession of it in the interest of all of them, that on the following day some other defendants were seen in possession of it in the presence of other defendants, and that thereafter it was taken to the house of one Doering for concealment, that shortly thereafter two men were taken to Doering's house on different occasions and a considerable part of the stolen bonds and securities was turned over to them for sale, that they saw two or more of the defendants at Doering's house, that sales were made and part of the proceeds was received by some of the defendants. We do not attempt to state the incriminating facts and circumstances which strongly tended to connect all defendants with the possession and concealment of the stolen mail, nor the evident relation between them. See Criminal Code, § 332 (Comp. St. § 10506). It is sufficient to say that in our judgment the proof made an issue for the jury as to each defendant.

[7] Returning now to the contention, impliedly if not expressly, made in those that have been stated, Did the proof tend to show the commission of only one offense of possession? See counts 13 and 14. There was no attempt to exactly segregate by proof the contents of the nine pouches, though the testimony leaves a fairly clear impression that the greater part, if not all, of the bonds and securities was in pouch M9545, Rotary No. 113; nor does the testimony show or tend to show how the nine pouches or their contents were handled after they were stolen, whether separately or all together, further than that some of the defendants, in the presence of other defendants and other persons, had possession of a basketful of

these securities on April 3d, and that shortly thereafter a large part, if not all, of the stolen securities were seen at the house of Doering by one or both of the men who were taken there. One of them took away with him about $150,000.00, face value, and succeeded in selling part of them in St. Louis and part in Chicago, where those that were not sold were found and recovered a year later. The facts in all respects noted could have been made more definite and certain. The proposition advanced seems to rest on the assumption that possession in defendants having been shown as by reasonable inference from the facts, that possession continued. There is circumstantial proof that all the stolen mail was first taken to the home of a confederate who lived some twenty miles from the city and there taken out of the pouches. The facts in that respect indicate an immediate concealment after the robbery. Under these changing conditions and in this state of the proof we cannot say there was a continuous possession covering all of the stolen mail, nor that defendants, after the securities were taken to Doering's house, did not repossess themselves of a part of the stolen and concealed mail.

Other claimed errors during the progress of the trial are insisted on: (a) That the court erred in its charge as to the effect of statements made and acts done by some of the defendants in the presence of other defendants; (b) statements made by Doering and other third parties in the presence of some of the defendants; (c) the instruction of the court as to the weight to be given to the testimony of an accomplice; (d) the instruction on circumstantial proof; and (e) the instruction of the court as to the consideration to be given to and the weight to be attached to the evidence of those who testified as experts—to each of which we have given full consideration. It suffices to say that we regard each wholly without merit and in no event prejudicial to the rights of the defendants. The case was carefully tried, the rulings of the court throughout the progress of the trial clearly limited the effect to be given to statements made by some of the defendants and to statements made in their presence, and the court's instructions to the jury fully and correctly stated every principle of law to be applied to the proof. It is our opinion that there was no reversible error and that all of the judgments and sentences should be affirmed.

It is so ordered.