## REID et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. November 8, 1921.)

No. 3538.

1. **Criminal law ⬅1159(2)—Weight of evidence not reviewable by appellate court.**

   If there is any substantial evidence to support a verdict of conviction, its weight will not be considered by an appellate court in reviewing denial of a motion for directed verdict.

2. **Intoxicating liquors ⬅138—Permit cannot authorize transportation for beverage purposes.**

   National Prohibition Act Oct. 28, 1919, tit. 2, § 6, does not authorize issuance of a permit to transport liquor except for nonbeverage purposes, and a permit obtained thereunder by false representations as to its purpose affords no protection for transportation for illicit purposes.

3. **Conspiracy ⬅45—Evidence held competent on charge of conspiracy to illegally transport.**

   On a charge of conspiracy to illegally procure and transport liquor in violation of National Prohibition Act Oct. 28, 1919, tit. 2, § 6, evidence that in organizing a corporation, in whose name a permit was obtained, defendants used fictitious names, *held* competent as tending to show a fraudulent purpose.

4. **Criminal law ⬅651(1)—Permitting view of premises by jury held not error.**

   Permitting the jury to view premises occupied by defendants about which testimony was given for the sole purpose, as stated by the court, of enabling the jurors to better understand the testimony, at which view defendants were permitted to be present if they desired, *held* not error.

In Error to the District Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

Criminal prosecution by the United States against John Reid, Ralph E. Hay, and Fred Kriss. Judgment of conviction, and defendants bring error. Affirmed.

H. W. Fraser, of Toledo, Ohio (Marshall & Fraser, of Toledo, Ohio, on the brief), for plaintiffs in error.

Gerard J. Pilliod, Asst. U. S. Atty., of Toledo, Ohio (Edwin S. Wertz, U. S. Atty., and Gerard J. Pilliod, Asst. U. S. Atty., both of Toledo, Ohio, on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiffs in error, together with four others, were indicted for an alleged conspiracy unlawfully to procure,

and unlawfully to transport to Toledo, Ohio, "certain intoxicating liquors, to wit, whisky, contrary to section 6, title II, of the Act of October 28, 1919, entitled the 'National Prohibition Act'" (41 Stat. 310). The overt act charged was the unlawful procuring from the Hayner Distilling Company, at Troy, Ohio, of 30 barrels of Hayner whisky, and its unlawful transportation from that distilling company to the Banner Chemical Company, at Toledo, Ohio, "all without having the permit therefor, as required by law." The indictment was dismissed as to each of the four other defendants, apparently for lack of sufficient evidence. Plaintiffs in error, under their plea of not guilty, were tried and convicted; their motion for directed verdict having been overruled. This writ is to review the judgment of conviction.

According to the undisputed evidence, the three plaintiffs in error, each acting under a fictitious name, employed an attorney to organize a corporation styled the Banner Chemical & Perfumery Company, under the general incorporation laws of Ohio, ostensibly for the manufacture and sale, among other things, of medicinal remedies and toilet articles, two of the plaintiffs in error becoming incorporators (with three other individuals), each of these two plaintiffs in error signing and verifying the articles under fictitious names. Two of the other incorporators seem to have been called in for the purpose of completing the statutory number, the third being one of the defendants dismissed on the hearing. Formulas were prepared for the ostensible manufacture of each of three articles, viz., a toilet water, a hair tonic, and a blood purifier, the first calling for "cologne spirits," the remaining two for "alcohol." Neither called for whisky. There was also issued to the Banner Company by the proper authorities (likewise under application by plaintiff in error Reid as president, and under his fictitious name) a permit to manufacture and sell the three articles before referred to as "proprietary and nonbeverage medicines, perfumes and toilet waters," according to the formulas before mentioned. There were also issued to the Banner Company, likewise under application by plaintiff in error Reid, as such president and in his fictitious name, permits under the National Prohibition Act, respectively to purchase or procure from the Hayner Distilling Company, and to transport from that company to the Banner Company, at Toledo, Ohio, 30 barrels of what in each permit was termed "rectified spirits." Two days before the transportation permit would expire, plaintiff in error Hay presented to the distilling company its warehouse receipts for 30 barrels of "whisky." The distilling company's clerk, after informing Hay that the whisky could not go out as "rectified spirits," and that there were no rectified spirits in a bonded warehouse, sent the permit to purchase to Cincinnati, by messenger, with check for the revenue stamps, and with instructions to ask, if she could change "rectified spirits" to "Hayner whisky." On the return of the messenger two days later, and on his suggestion, the clerk, in the presence of Hay and with his knowledge, substituted for "rectified spirits" the words "Hayner whisky" in the permit to purchase, and "Hayner spirits" in the permit to transport. The 30 barrels of whisky were thereupon

delivered to plaintiffs in error, and were transported by them from Troy, Ohio, to Toledo, Ohio, in two trucks hired by them for the purpose, and were at Toledo put in a building controlled by plaintiffs in error at the address given in the permits as the place of business of the Banner Company. The whisky was seized by the officers soon after its arrival.

There was undisputed evidence that no application was ever made, or permit obtained, to purchase or procure "Hayner whisky" or to transport "Hayner spirits"; that "rectified spirits" does not include commercial whisky; that whisky in order to its conversion into alcohol requires a redistillation by an elaborate and expensive apparatus known as a rectifying still; that such rectification could under the law be carried on only by one who qualifies as a rectifier, pays the special tax, and acts under government supervision.

We consider the prominent grounds of attack upon the conviction, although not in the precise order in which they are discussed in the brief of plaintiffs in error.

[1] 1. It is urged that verdict should have been directed in favor of plaintiffs in error for lack of evidence beyond reasonable doubt that they willfully and knowingly conspired to unlawfully procure and unlawfully transport the whisky in question from Troy to Toledo, contrary to section 6 of the act; and the argument is made that not only is there no evidence that plaintiffs in error had any intention of violating the law in connection with the permits to purchase and transport the liquor, but that, on the contrary, they did everything they could to comply with the law, citing the employment of a skillful and reputable attorney for advice, the use by the attorney of the words "rectified spirits" upon the suggestion of a chemist, that the applications for the permits showed the serial and certificate numbers of the warehouse receipts; that plaintiffs in error did nothing but to sign what their attorney prepared and directed them to sign, and in the belief that the permits were in every way regular; and that plaintiffs in error merely submitted passively to the changes made in the permits at the distilling company's office. But the jury was not bound to draw these inferences.

There was substantial evidence tending to show that the entire scheme entered upon and carried out by plaintiffs in error (including the incorporation, the formulas, the obtaining of permits to manufacture, to purchase, and to transport, the purchasing and transporting, as well as the renting of the building) was conceived for the fraudulent purpose of obtaining whisky for illicit purposes. Plaintiffs in error were provided with a copy of the Volstead Act and of the departmental regulatons thereunder. They presumably knew they could not obtain permits for the purchase and transportation of intoxicating liquors for other than nonbeverage purposes. It was open to inference that they knew that the formulas were prepared as basis for obtaining permits to manufacture; also, that commercial whisky could not be used for manufacturing the articles they claimed they intended to make; and that permits calling in terms for whisky could not be permitted. The testimony strongly tends to negative the theory of

blind following of attorney's instructions and passive acquiescence in the changes made in the permits. In addition to what has already been stated, there was testimony that when Hay presented his [warehouse] certificates to the distilling company, he called for whisky, although that word appeared in neither permit; that on the objection that the certificates did not call for rectified spirits, Hay asserted that he thought that would make no difference, and the question was argued "pro and con" between Hay and the distilling company's clerk; that plaintiffs in error told the attorney, in connection with the making out of the applications for the permits, that they "had the paraphernalia ordered and when the whisky got to Toledo the other would be here"; that Hay told the distilling company's clerk when the permits and certificates were first presented that he "had to have the whisky and would pay any price to get it"; that when the messenger suggested going to Cincinnati Hay said he would "pay any price to send a messenger down," and that he "would have to have it by Saturday as he had three chemists waiting for the whisky." There is an entire absence of competent testimony that plaintiffs in error had ordered any paraphernalia or engaged any chemists to manufacture the preparations in question.[1] There was also testimony tending to show that Hay registered at the Troy hotel on Thursday under the fictitious name of Marshall, Kriss on Friday under the name of Myers, and Reid on Saturday under the name of Howard; that the trucks left Troy at about 9:30 Saturday morning, arriving at Toledo apparently late Sunday night or early Monday morning, the three plaintiffs in error, together with one of the discharged defendants, accompanying the trucks to Toledo, two of them all the way through, the other two joining them at a later point; that the whisky was unloaded from the trucks at about 4 o'clock in the morning; that the building before referred to, in which the whisky was placed, was of one story, containing two vacant rooms, having in it no vats or manufacturing apparatus of any kind, its only contents when raided by the officers being the 30 barrels of whisky, a couple of chairs, a table, and some small glass bottles. There was also testimony that Reid told the chauffeur who drove him to Troy on the occasion in question that he was going there for "30 barrels of booze for blood purifier"; that if he "got rid of this he could pay the debts and then have some money." The fact that the applications for the permits showed the serial numbers of the liquor packages in bond is not of controlling importance. The government's officers were not bound to compare these serial numbers with other records to ascertain the nature of the packages. The suggestion that the revenue officer at Cincinnati approved of the change in the permits is without merit. Not only does it not appear that this officer authorized any change, but he was without power to do so. Moreover, it does not appear that the permit to transport was even taken to Cincin-

---

[1] The attorney who drafted the applications for permits says the formulas in typewritten form, were brought to him by a gentleman "who was employed as a chemist by these men"; but if it be assumed that the attorney had personal knowledge of the employment, it does not appear that the employment went beyond the preparation of formulas.

nati. There was thus substantial testimony tending to show the formation of the conspiracy charged. This being so, the question whether it satisfied beyond a reasonable doubt was for the jury. We cannot weigh the testimony. Burton v. United States, 202 U. S. 345, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392; Kelly v. United States (C. C. A. 6) 258 Fed. 392, 406, 407, 169 C. C. A. 408; West v. United States (C. C. A. 6) 258, 413, 421, 169 C. C. A. 429. The motion to direct verdict was properly denied.

[2] 2. It is further contended that the overt act alleged was not proven. It is argued that as the specific offense charged is a conspiracy unlawfully to procure and unlawfully to transport whisky to Toledo in violation of section 6 of the act, and as that section does not (in terms) make the procuring of whisky an offense, it follows that the essential charge is merely a conspiracy to transport the liquor without a permit; and that the only complainable overt act is the actual transportation of the liquor. It is further argued that as the departmental regulations could not authorize the commissioner to require triplicate copies,[2] inasmuch as plaintiffs in error had a permit, the same could not be invalidated by the fact that the remaining two of the triplicate copies did not fully conform thereto: that as the nature of the packages could have been identified by means of the serial numbers contained in the application for permit, neither the commissioner nor the director could have been misled by the use of the terms "spirits" and "rectified spirits"; that the changes made by the distilling company's clerk were thus merely corrections in the interest of truth, and that until the commissioner should revoke the permit plaintiffs in error were protected by it. There is repeated an assertion of the nonresponsibility of plaintiffs in error for the change.

It may be assumed, for the purposes merely of this opinion, that the indictment should be construed as charging only a conspiracy to transport the whisky in question without permit therefor; and the only overt act as its transportation without such permit. But the asserted conclusions do not follow. The act, section 3, explicitly forbids the sale and transportation of intoxicating liquors except for nonbeverage purposes; and it follows that section 6, which forbids selling, purchasing, and transporting liquor without first obtaining a permit therefor, does not authorize or attempt to authorize a permit to transport liquor for other than nonbeverage purposes, but relates only to transportation for lawful purposes; and that a permit fraudulently procured by false representations as to its purpose, with the actual intention and purpose of thereby effecting transportation of whisky for illicit purposes, would afford no protection. It results that even had the transportation permit been issued for "Hayner's spirits" an indictment charging its issue by false and fraudulent representations, and for the fraudulent purpose of thereby effecting the transportation

[2] This proposition is not sustainable. National Prohibition Act, § 1 (7); Buttfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525; Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523; Coopersville Co. v. Lemon (C. C. A. 6) 163 Fed. 145, 147, 89 C. C. A. 595.

of whisky for illicit purposes, would be good. We need not consider whether the indictment here would cover such a charge. Such was not the fact. The permit actually issued (the only one) did not cover "Hayner's spirits." It called for "rectified spirits." It did not authorize the transportation of commercial whisky, much less its transportation for other than nonbeverage purposes. It is enough to say that if the fraudulent representation and purpose is found plaintiffs in error are not in position to claim that the change was made merely in the interest of truth, and that the commissioner and director, in issuing the only permit given, were not misled by the use of the term "spirits," and that the permit as changed would protect plaintiffs in error until revoked. The trial judge instructed that plaintiffs in error should not be convicted merely because of the changes made in the permit, but submitted the fact of the change "having regard to all the circumstances of this case"; and charged in substance that if plaintiffs in error, with their associates, were actually engaged in a good-faith effort to procure the liquor for the manufacture of their preparations, for the benefit of the public (although benefiting themselves also) "it would shock conscience to prosecute them for illegal transportation" because of the fact that the transportation permit, issued under the circumstances shown, had been changed as it was changed; and after the close of the charge, and after exceptions thereto had been taken, the court on its own motion further instructed the jury as stated in the margin hereof.[3]

Plaintiffs in error were thus not tried and convicted for participation in a forgery of the transportation permit; nor were they convicted merely because of bad faith generally. They were convicted of conspiring to fraudulently transport (perhaps also to fraudulently purchase) the whisky, the conviction carrying with it the finding of the commission of an overt act, which means merely a step in carrying out the object of the conspiracy, viz., the actual transportation of the whisky without permit therefor. There was substantial evidence of the commission of the overt act charged. Such overt act, even by one plaintiff in error (without the knowledge of the others), if within the scope of the conspiracy (as was fairly inferable here), would bind all the plaintiffs in error. Criminal Code, § 37; Comp. St. 1916, § 10201; Bannon v. United States, 156 U. S. 464, 468, 15 Sup. Ct. 467, 39 L. Ed. 494; United States v. Rabinowich, 238 U. S. 78, 86, 35 Sup. Ct. 682, 59 L. Ed. 1211; Grayson v. United States (C. C. A. 6) 272 Fed. 553, 557. However, it was fairly open to inference that each plaintiff in error knew and approved of the change made.

[3] "If you find that the defendants were acting all through the transactions in question in good faith, or if you are unable to find beyond a reasonable doubt an absence of good faith, in such a case as that, there could be no verdict of guilty of conspiracy under this charge, because as the court has said, underlying the whole case is the question of good faith, and if the government has not been able to convince you beyond a reasonable doubt these parties were acting in bad faith, the government has not made a case, sufficient, in the court's judgment, to justify you in returning a verdict of guilty beyond a reasonable doubt."

[3] 3. We see no merit in the contention that the use of fictitious names in the incorporation of the Banner Company constituted no evidence of fraudulent intent. The argument that one may lawfully change his name without resort to legal proceedings, and may adopt any name he may choose under which to transact business, and that a certificate of incorporation once duly granted cannot be collaterally attacked for bad faith in obtaining it, is all beside the mark. According to the government's theory, the incorporation was a mere form and a sham, designed to give color of lawful action in executing a fraudulent conspiracy. Inferably the use of fictitious names in the articles was designed to conceal the identity of plaintiffs in error. It had a direct tendency to show lack of good faith in the incorporation and active fraud therein, and thus tended to support the charge of conspiracy. The suggested analogy to the use of dummy incorporators is without force. Plaintiffs in error were not "dummies" in any proper use of that term. It is not material that the state alone could undo the incorporation. Its validity was not necessarily in issue here. The evidence was clearly material and competent upon the charge of fraudulent conspiracy.

4. In the charge the query was raised whether there was ever "with relation to, this transaction, a real incorporation," and it was stated as the judgment of the court that the use and signing of fictitious names in verifying the articles of incorporation thwarted the very object of the statute. Even if this instruction was technically erroneous (we do not so declare), it plainly was not reversible error, in view of the explicit instruction that conviction of the charge of conspiracy could not be had in the absence of a finding of bad faith "all through the transactions."

[4] 5. The objection that the jury was permitted to view the premises is in our opinion without force. The jury was told in open court, and presumably in the presence of plaintiff in error, that the purpose of the view was to enable "a clear idea" to be had of the testimony that the government might offer as to what sort of a place it was; that the purpose was "not to gain evidence, but simply to give you the means of better understanding the evidence"; that counsel for the defendants as well as the defendants themselves were at liberty to be present; that there was to be "no discussion of any kind concerning the case in any way, or the kind of place you see"; that talk in the hearing of the jury "shall be nothing more than that which is briefly necessary to identify the place. There will be no discussion of the merits of the case."

The making of such an order was within the court's discretion. Whether plaintiffs in error attended does not appear. It is not suggested that they were in custody. The government's assertion that they were on bail is not denied. Their failure to attend after opportunity given would constitute a valid waiver of the right to be present. Valdez v. United States, 244 U. S. 432, 442, 37 Sup. Ct. 725, 61 L. Ed. 1242; People v. Auerbach, 176 Mich. 23, 47, 141 N. W. 869, Ann. Cas. 1915B, 557. Presumably their counsel attended. In any event, no complaint is made of anything which actually took place

at the view. The suggestion that plaintiffs in error were not tried "upon any possible intentions with regard to the future of that whisky" is answered by the proposition that under the charge an intent to use the whisky unlawfully was inherently necessary to conviction.

6. Of the alleged errors in the exclusion and admission of testimony to which attention is called in brief of plaintiffs in error, it is enough to say that we have considered them all, but find nothing of which complaint can properly be made.

The judgment of the District Court is affirmed.