ALBERT v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1922.)

No. 3588.

1. Intoxicating liquors ☞224—Whisky presumed to contain more than one-half of 1 per cent. alcohol.

In a prosecution for violation of National Prohibition Act by possessing or selling intoxicating liquor, proof that the liquor in question was whisky, and that it was in fact intoxicating, warrants the assumption that it contained more than one-half of 1 per centum of alcohol.

2. Criminal law ☞459—Witnesses as to character of liquor held competent.

That witnesses who testified that certain liquor was whisky were not in express terms shown to be familiar with the appearance, taste, smell, and effect of whisky held not to render their testimony incompetent for submission to the jury.

3. Intoxicating liquors ☞224—Burden rests on seller to prove possession of permit.

In a prosecution for sale of liquor in violation of National Prohibition Act, the burden rests on defendant to prove his possession of a permit.

4. Criminal law ☞935(3), 1036(8)—Objection to sufficiency of evidence must be raised on the trial.

In a prosecution for illegal sale of liquor, the objection that the evidence did not show a sale must be made on the trial and cannot be raised for the first time by motion for new trial or in the appellate court.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Intoxicating liquors ⊕146(1)—Payment by bad check does not prevent transaction from being a sale.**

That a check given in payment for liquor proved to be worthless did not prevent the transaction from being a sale.

**6. Criminal law ⊕508(9)—Conviction not reversible because based on testimony of accomplices.**

That a conviction rested largely, or even entirely, on the testimony of accomplices, is not enough to invalidate it, where the jury was properly cautioned with respect to consideration of such testimony.

In Error to the District Court of the United States for the Southern District of Ohio; John W. Peck, Judge.

Criminal prosecution by the United States against Meyer Albert. Judgment of .conviction, and defendant brings error. Affirmed.

J. W. O'Hara, of Cincinnati, Ohio (Frank E. Wood, of Cincinnati, Ohio, on the brief), for plaintiff in error.

James R. Clark, Sp. Asst. Atty. Gen. (Thomas H. Morrow, of Cincinnati, Ohio, on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error was convicted upon trial under an indictment containing three counts, the first for unlawfully possessing "certain intoxicating liquor, to wit, whisky," the second for unlawfully transporting such liquor, and the third for unlawfully selling and delivering it. The liquor was described in each of the three counts as containing "more than one-half of 1 per cent. of alcohol by volume, for beverage purposes." In the first and third counts the existence of permits for such possession and sale was negatived. Sentence was imposed under the second and third counts.

The conviction is assailed upon three grounds: (1) Lack of proof that the liquor contained one-half of 1 per cent. of alcohol by volume and that it was used for beverage purposes; (2) alleged error in the charge of the court that the burden was on plaintiff in error to prove that he had a permit; and (3) lack of competent and substantial evidence connecting defendant with the sale in question.

[1] 1. Section 1 of title 2 of the National Prohibition Act (41 Stat. 307) provides that, when used in titles 2 and 3:

"The word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, *whisky*, rum, gin, beer, ale, porter and wine, and *in addition thereto* any spirituous, vinous, malt, or fermented liquor, liquids, and compounds, whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of one per centum or more of alcohol by volume which are fit for use for beverage purposes."[1]

The trial judge was of opinion that the words "containing one-half of 1 per centum or more of alcohol by volume which are fit for use for beverage purposes" was not a limitation upon "alcohol, brandy, *whisky* and other liquors known to be intoxicating," but related to the liquors mentioned in the "in addition thereto" clause which might or might not be intoxicating, but that if the one-half of 1 per cent. limitation was intended to apply to whisky, yet that an alcoholic liquor shown

[1] All italics in this opinion are ours, unless otherwise stated.

in fact to be intoxicating might be assumed to contain more than one-half of 1 per cent. of alcohol. The first conclusion stated receives much confirmation from the language of the section which we have quoted. It is, moreover, fortified to some extent by the construction of a similar state statute in State v. Centennial Brewing Co., 55 Mont. 500, 179 Pac. 296. But, regardless of this, we think the second conclusion above stated plainly correct as applied to the whisky involved here, and that there was substantial evidence tending to show that it was intoxicating, and that it had much more than the permitted alcoholic content. While there was no testimony in express terms that the liquor in question contained one-half of 1 per cent. or more of alcohol, there was testimony supporting that conclusion; among other things, that it was bought and sold as whisky (as one of the go-betweens testified: He "was talking about whisky, not beer or toilet water") ; that the purchase price was $94 a case, which would be $7.83 a quart, a price not naturally applicable to nonintoxicating liquors of less than one-half of 1 per cent. alcoholic content; that the liquor both smelled and tasted like whisky, and that it was *in fact whisky,* three persons having drank part of it, one of them becoming intoxicated thereby. There was also evidence tending to show that some of the bottles contained what appeared to be government bottled in bond stamps, which would indicate, in case of whisky for domestic consumption, that the spirits were at least 100 proof, and if for export purposes not less than 80 per cent. proof. Act March 3, 1897, c. 379, § 2; Comp. Stat. § 6071. Whisky is a well-known, distilled, spirituous, and intoxicating liquor. It is matter of common knowledge, of which we may properly take judicial cognizance, that whisky, properly so-called, contains many times one-half of 1 per cent. of alcohol.[2] Recognition that distilled spirits are always intoxicating is found in United States v. Standard Brewery, 251. U. S. 210, 219, 40 Sup. Ct. 139, 64 L. Ed. 229; and see Ruppert v. Caffey, 251 U. S. at page 298, 40 Sup. Ct. 141, 64 L. Ed. 260. It was clearly competent for witnesses familiar with liquor to testify, from its appearance, its smell, its taste, and its effect, that it was whisky, and the fact that it was bought and sold as such is evidence in the same direction. Rose v. United States (C. C. A. 6) 274 Fed. 245, 247; Singer v. United States (C. C. A. 3) 278 Fed. 415, 418; Lewinsohn v. United States (C. C. A. 7) 278 Fed. 421, 425 (distinguishing Berry v. United States, 275 Fed. 680).

[2] The fact that the witnesses who testified to the identity of the whisky were not, in express terms shown to be familiar with the appearance, smell, taste, and effect thereof did not render the testimony insufficient for submission to the jury. No suggestion of lack of competency of the witnesses was made upon the trial. A presumption of more or less competency would be justified by the fact that they were engaged in transactions of that nature. But this lack, if it be such, is more than compensated for by other considerations, to

---

[2] In Remington's Practice of Pharmacy, whisky is said to contain 44 to 45 per cent. by volume of absolute alcohol, and 37 to 47.5 per cent. by weight; and see the definition of whisky quoted in Singer v. United States (C. C. A. 3) 278 Fed. at page 418, as given in the United States Pharmacopœia.

281 F.—33

which attention has been called, including price, bottling stamps, and practical proof of intoxicating character. The suggestion that there was lack of proof that the sale was for beverage purposes is without merit. It was open to the jury to so conclude from the testimony, including the absence of suggestion that the property was being bought and sold for nonbeverage purposes, or by persons interested in dealings for such purposes, as well as by the clandestine nature of the purchase, sale, and delivery.

[3] 2. The burden of showing the possession of a permit was properly placed upon plaintiff in error. The principle of the following cases is controlling: United States v. D. & R. G. Ry. Co., 191 U. S. 84, 92, 24 Sup. Ct. 33, 48 L. Ed. 106; Faraone v. United States (C. C. A. 6) 259 Fed. 507, 509, 170 C. C. A. 483; Kiersky v. United States (C. C. A. 6) 263 Fed. 684, 686; Laurie v. United States (C. C. A. 6) 278 Fed. 934, 936. Of course, plaintiff in error could have had no permit to sell intoxicating liquors for beverage purposes. National Prohibition Act, § 3; Reid v. United States (C. C. A. 6) 276 Fed. 253, 257.

[4] 3. There was competent and substantial evidence tending to establish defendant's active participation in the sale, including the testimony of the alleged purchaser and two go-betweens. In the trial court no question was raised as to the sufficiency of the evidence to show an actual sale, either by the motion to direct verdict or by exception to the instruction that the evidence tended to show a sale. It is, however, urged here that the evidence negatived the fact of a completed sale and showed that the minds of the parties did not meet thereon; a contention which plaintiff in error is not entitled, as matter of right, to raise here for the first time. Lockhart v. United States (C. C. A. 6) 264 Fed. 14, 16, 17; Loewenthal v. United States (C. C. A. 6) 274 Fed. 563, 568, and cases cited. It was too late to raise the question on motion for new trial, which was addressed to the discretion of the trial court. Moore v. United States, 150 U. S. 57, 61, 14 Sup. Ct. 26, 37 L. Ed. 996; Lockhart v. United States, supra; Loewenthal v. United States, supra. The motion in arrest of judgment was equally futile for this purpose, as such motion lies only for material error on the face of the record, which does not include the testimony or the charge. Dierkes v. United States (C. C. A. 6) 274 Fed. 75, 83.

[5] We think plaintiff in error not in position to ask the indulgence, sometimes exercised in criminal cases,[3] to consider questions not made or not saved upon the trial, in order to prevent a miscarriage of justice. The undisputed evidence shows (the defense presented no testimony on the trial) that upon the delivery of the 100 cases of whisky here in question a check for $9,400 (which was the amount of the purchase price) was given by the purchaser to plaintiff in error. It appeared by uncontradicted testimony that when the check was so delivered plaintiff in error asked if it was all right, and was told that it would be as good as gold in the morning; that he replied "All

[3] Crawford v. United States, 212 U. S. 183, 194, 29 Sup. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392.

right," put the check in his pocket, and went away with it, leaving the whisky in the possession of the purchaser. The record contains nothing further as to what happened afterward, except that it appeared by the testimony of the internal revenue collector that a few days after the sale, and while plaintiff in error was being questioned regarding the transaction, he said that "the check upon presentation turned out to be a 'bum check.'" Taking the testimony together, it was properly inferable that plaintiff in error supposed he had completed the sale and that he had the equivalent of the purchase price in his pocket. As the District Judge well said:

"If it had been a legitimate transaction, * * * the check being bad, the seller could have sued the purchaser for the price. So that the fact that the check turned out to be a worthless check, if that be a fact, does not make the transaction in question necessarily no sale."

Apart from this extrajudicial statement of plaintiff in error, there was no testimony indicating that the check was bad. The jury was not bound to find from the evidence that the purchaser did not intend to make the check good. Upon the argument here it was, however, said by counsel for plaintiff in error that during the night the whisky disappeared from the house in which delivery had at an earlier hour been made. The implication seems to be that the purchase was a mere pretense—in aid of a theft. This is at best mere surmise. It is fully as open to inference that the whisky was placed temporarily only in the building in Cincinnati, which belonged to a relative of one of the go-betweens—there being testimony that plaintiff in error said that "his permit would not allow its delivery in Kentucky." If the whisky was to be moved, the night would seem a not unnatural time therefor.

We may add that the objection that the guilt of plaintiff in error was not shown beyond a reasonable doubt is answered by the fact that, even were the point properly raised, it would be enough that there was substantial and competent evidence tending to sustain the conviction. Burton v. United States, 202 U. S. 344, 373, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392; Kelly v. United States (C. C. A. 6) 258 Fed. 392, 406, 169 C. C. A. 408, and cases cited.

[6] The fact that the conviction rested largely, or even entirely, upon the testimony of accomplices, is not enough to invalidate. Caminetti v. United States, 242 U. S. 470, 495, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Holmgren v. United States, 217 U. S. 509, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778. The jury was cautioned to regard the testimony of accomplices "with care, with circumspection and caution." This was enough. Ray v. United States (C. C. A. 6) 265 Fed. 257.

Finding no error in the record, the judgment of the District Court is affirmed.