## RUDNER et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 9, 1922.)

No. 3635.

1. **Conspiracy 43(3)—Means of accomplishment not necessarily unlawful need not be set out in indictment.**

In an indictment for conspiracy to commit a crime by means not necessarily unlawful, such means need not be set out.

2. **Conspiracy 43(2)—Indictment need not allege manner in which defendants entered conspiracy.**

It is not necessary to the validity of an indictment for conspiracy, as protecting defendants against future prosecutions or enabling them to prepare their defense to set out the manner in which they came into the conspiracy.

3. **Indictment and information 110(10)—In general indictment in language of statute is sufficient.**

It is the general rule that an indictment charging conspiracy to commit a crime is sufficient, if it follows the language of the statute and contains a sufficient statement of an overt act to effect the object of the conspiracy.

4. **Criminal law 113—Jurisdiction of conspiracy in different districts.**

Where an indictment charges a conspiracy formed in each of two federal districts to commit a crime and overt acts committed in each district, it is not essential to jurisdiction in one district that all defendants should have participated in overt acts in that district, but it is sufficient if some of them did.

5. **Conspiracy 40—Persons joining and participating in conspiracy after its formation equally liable.**

Where the evidence showed a continuing conspiracy for the illegal purchase and sale of liquor, persons who, with knowledge of the conspiracy, contributed to its carrying out by knowingly selling liquor to the initial conspirators, though at different times and without knowledge of each other, became parties to the conspiracy.

In Error to the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Criminal prosecution by the United States against Ben Rudner and others. Judgment of conviction, and defendants bring error. Reversed as to defendant George Nauman, and affirmed as to remaining defendants.

E. H. Moore, of Youngstown, Ohio (Moore, Barnum & Hammond, of Youngstown, Ohio, and George H. Clark, of Canton, Ohio, on the brief), for plaintiffs in error.

Joseph C. Breitenstein, Asst. U. S. Atty., of Cleveland, Ohio.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. The plaintiffs in error (8 in number), together with 12 other persons, were jointly indicted in the District Court below upon a charge of conspiring, at Pittsburgh, Pa., Canton, Ohio, and elsewhere in the Northern district of Ohio, under section 37 of the Criminal Code (Comp. St. § 10201), to violate the National Prohibition Act 41 Stat. 305), particularly title 2, by unlawfully, willfully, and knowingly selling, bartering, transporting, delivering,

furnishing, and possessing distilled spirits and intoxicating liquor' otherwise than as authorized by the National Prohibition Act, and in violation of the provisions of that act. Plaintiffs in error Ben Rudner, Morris Rudner, Windolf, Jacobs, and Lundgren all resided at Canton, Ohio. Plaintiffs in error Darling, Charles Nauman, and George Nauman resided at Pittsburgh, Pa. Twenty-nine overt acts were charged, a large number relating to transportation by Ben Rudner, either alone or with others, including in two or more instances plaintiff in error Morris Rudner, of whisky from Pittsburgh to Canton, one relating to the sale of whisky by plaintiff in error Darling and another, at Pittsburgh, to Ben Rudner and another; another overt act charged relating to sale by both Charles and George Nauman to Ben Rudner, also at Pittsburgh; another relating to sales by one or more of plaintiffs in error or others at Canton; still others of the overt acts charged relating to other transportations, either by one or more of plaintiffs in error; others alleging the having of whisky in possession either by one or more of plaintiffs in error or by others charged in the indictment; still others relating to transporting, selling, and delivering whisky at different places in the Northern district of Ohio. Each of the plaintiffs in error was charged to have been connected with the commission of one or the other of the overt acts. In each case the overt acts stated were charged to have been committed in violation of the National Prohibition Act, and the whisky alleged to be of the character and sold for the purposes prohibited by the act.

Each plaintiff in error demurred to the indictment, as not stating facts sufficient to show the commission by the defendant of an offense against the United States, and as not stating facts charging such defendant with the commission of an offense within the Northern district of Ohio. These demurrers were overruled. Motions to quash the indictment, presented by each of the plaintiffs in error, for reasons set forth in the margin of this opinion,[1] were likewise overruled, and trial had, resulting in the conviction of plaintiffs in error. Numerous criticisms are made upon the proceedings below, the more important of which will appear in the course of this opinion.

[1] "(1) Said indictment charges various separate and distinct offenses in a single count of said indictment. (2) Said indictment does not state the means or manner by which the alleged conspiracy was to be carried into effect, nor the means or manner by which the alleged offenses were to be committed in pursuance of the claimed conspiracy. (3) That the said indictment does not charge in the body thereof, in connection with the allegations relating to the claimed conspiracy, the name of the person or persons to whom the whisky was sold, or by whom the whisky was to be transported. (4) That said indictment does not set forth the claimed offense with sufficient particularity to enable the defendant, if either convicted or acquitted thereon, to establish a plea in bar to a second trial for the same offense. (5) That under the allegations of said indictment it does not appear that the overt acts therein set forth occurred subsequent to the time of entering into the alleged conspiracy. (6) That there are two other indictments returned, and still pending, in the same district, against the same defendant, charging the same offense. (7) That the various overt acts set forth in said indictment in no wise connect the said defendant with the conspiracy charged in said indictment. (8) That the said indictment does not state facts showing that any offense was committed by this defendant within the Northern district of Ohio."

[1] 1. We think the indictment sufficiently describes the offense charged. It in terms charges a conspiracy to commit a crime, or a series of crimes. The conspiracy is alleged to have been formed subsequent to January 16, 1920, on which date the Volstead Act took effect. Dillon v. Gloss, 256 U. S. 368, 41 Sup. Ct. 510, 65 L. Ed. 994. It was clearly criminal unlawfully to sell, barter, transport, deliver, furnish, or possess distilled and intoxicating liquors otherwise than as authorized under the Volstead Act, and in violation of its provisions. It is the general rule that, where the ultimate object of the conspiracy is not unlawful, but is to be accomplished by unlawful means, such means must be set out; but where the conspiracy is to commit a crime by means not necessarily unlawful such means need not be set out. Jelke v. United States (C. C. A. 7) 255 Fed. 264, 275, et seq., 166 C. C. A. 434. That the overt acts need not be criminal is well settled. United States v. Rabinowich, 238 U. S. at page 86, 35 Sup. Ct. 682, 59 L. Ed. 1211.

[2] Nor was it necessary to the validity of the indictment, as protecting defendants against future prosecutions or to enable them to prepare their defense, to set out the manner in which the defendants came into the alleged conspiracy, and from the language of the indictment the trial court was readily able to determine whether the facts charged therein were sufficient to support a conviction. It is true that it is not per se unlawful in any and every case to sell, barter, transport, deliver, furnish, or possess distilled spirits and intoxicating liquors; but it is unlawful per se to sell, transport, etc., distilled spirits and intoxicating liquors otherwise than as authorized by the National Prohibition Act. Whisky is both a distilled and intoxicating liquor, as the court will take judicial cognizance. Albert v. United States, 281 Fed. 511, decided by this court June 6, 1922.

[3] It is the general rule that an indictment attempting to charge conspiracy to commit a crime is sufficient if it follows the language of the statute and contains a sufficient statement of an overt act to effect the object of the conspiracy, unless the conspiracy involves its carrying out in such a manner that the defendants would not be fairly and reasonably informed of the character of the offense without detailed statement of the means, the time and the place, which we think is not the case here. Jelke v. United States, supra, 255 Fed. at page 275, 166 C. C. A. 434. If, as might be the case, defendants had desired further detailed information to prepare for the trial, the well-established federal practice enabled them to obtain the same by calling for a bill of particulars. Rosen v. United States, 161 U. S. 29, 34, 16 Sup. Ct. 434, 40 L. Ed. 606; Dierkes v. United States (C. C. A. 6) 274 Fed. 75, 76, and cases there cited. No bill of particluars was asked for. Possibly it was deemed unnecessary by reason of the elaborate statement of overt acts contained in the indictment.

[4] The indictment stated the commission of an offense within the Northern district of Ohio, not only in the inclusion of that district as one of the places in which the conspiracy was formed, but especially in the fact that overt acts were alleged to have been committed in that district by some of the conspirators. It was unnecessary to juris-

diction that all the defendants should· have committed an overt act therein. It is enough that any one of them did so. Bannon v. United States, 156 U. S. 464, 468, 15 Sup. Ct. 467, 39 L. Ed. 494; United States v. Rabinowich, 238 U. S. at page 86, 35 Sup. Ct. 682, 59 L. Ed. 1211. We see no merit in the suggestion that the indictment charges various separate and distinct offenses under a single count of the indictment. The single offense charged in the indictment is a conspiracy to violate the National Prohibition Act in the manner stated. The remaining objections contained in the motion to quash are so plainly without merit as to require no further specific comment. The sufficiency of the indictment is sustained by authorities, among which are Joplin Merc. Co. v. United States (C. C. A. 8) 213 Fed. 926, 929, et seq., 131 C. C. A. 160, Ann. Cas. 1916C, 470; Jelke v. United States (C. C. A. 7) 255 Fed. 264, 166 C. C. A. 434; Shepard v. United States (C. C. A. 9) 236 Fed. 73, 149 C. C. A. 283; Hockett v. United States (C. C. A. 9) 265 Fed. 588.

[5] 2. Defendants contend that the evidence, if it shows any conspiracy, shows a series of conspiracies between nonconfederate groups of defendants. This contention grows out of this situation: The evidence shows without dispute (neither plaintiff in error testified) that the conspiracy was formed among the Canton defendants (some or all of them), of which conspiracy Ben Rudner was the head and front, embracing for its objects the various classes of acts charged in the indictment, and before any of the purchases of whisky involved in this case were made at Pittsburgh. The evidence is sufficient to sustain a conclusion that the conspiracy embraced broadly the purchase by Ben Rudner of whisky in Pittsburgh (or elsewhere, if more convenient), the illegal transporting of such whisky to Canton, and its unlawful possession and sale there and in that vicinity. The testimony is to the effect that from the early part of the year 1920, until at least the month of October, Ben Rudner and his associates made a considerable number of wholesale purchases of whisky from Darling & Biener, at Pittsburgh, and that beginning about perhaps the middle of December, and for some months after that, similar purchases were made by Ben Rudner and his associates from the Naumans, or at least one of them.

The point raised is that, as the Naumans had nothing to do with any sales made by Darling & Biener, nor had Darling & Biener anything to do with sales made by the Naumans, and as those made by the latter were subsequent to those made by the former, there was thus no concert between Darling & Biener, on the one hand, and the Naumans, on the other. So far as the record shows the fact is as just stated; but in our opinion this does not subject either the indictment or the evidence to the criticism we are considering. A conspiracy under section 37 may be a continuous crime. Brown v. Elliott, 225 U. S. 392, 32 Sup. Ct. 812, 56 L. Ed. 1136. It was open to the jury to find that the conspiracy between Ben Rudner and some or all of the other Canton defendants was not only the initial, but the substantial and continuing, conspiracy which had the objects already stated. The jury was instructed, and we think correctly, that one joining a conspiracy after

its formation, by contributing to its carrying out with knowledge thereof, would be liable, and that it was not necessary that any party to the conspiracy should know all who were in it (Thomas v. United States [C. C. A. 8] 156 Fed. 897, 912, 84 C. C. A. 477, 17 L. R. A. [N. S.] 720; United States v. Standard Oil Co. [C. C. A. 8] 152 Fed. 290, 294, 295; and see United States v. L. S. & M. S. Ry. Co. [D. C.] 203 Fed. 295, 307); that it is enough that the Pittsburgh defendants knew that the Canton parties were engaged in that general conspiracy; and that it was not important whether one firm of Pittsburgh dealers know that the other Pittsburgh dealers were being similarly dealt with. The dropping out of Darling & Biener before the Naumans came in would thus not end such original conspiracy.

As applied to this case, we can see no opportunity for prejudice to either of the Pittsburgh parties through the application of this rule. Not only was there no attempt to hold them liable for the statements of other members of the conspiracy made in their absence, but the jury was expressly instructed that the Naumans, for example, would not be liable for any acts of the other conspirators previous to the sales made by the Naumans themselves. The rights of the defendants were carefully guarded throughout the charge. The jury was told, for example, that the testimony of Kitzig, who turned state's evidence, should be looked upon with scrutiny and suspicion, both by reason of his criminal conduct and by his hope of gain by assisting the government, and the jury was recommended not to convict anybody on his uncorroborated testimony. Again, the jury was told that, unless it believed the testimony of one Wertheimer (hereinafter referred to), there was no evidence of guilt on the part of the Naumans, except that of the accomplice, Kitzig.

3. Unless as to George Nauman, whose case will be hereafter specially considered, there was no error in denying the motion to direct verdict for defendants who are here complaining. As to Darling there is abundant evidence of repeated sales of whisky in large quantities to Rudner and his associates, and under circumstances amply justifying the conclusion that he knew it was being regularly transported to Canton for general bootlegging purposes, thus indicating concert of action in the unlawful enterprise. See Davidson v. United States (C. C. A. 6) 274 Fed. 285, 287. As to Charles Nauman there was, to say the least, competent and substantial testimony of several sales by him to the same parties, and under circumstances equally justifying the same conclusion. There was substantial and competent testimony that Ben Rudner and Jacobs were at least a portion of the time in partnership in a general bootlegging business; that Kitzig and one other chauffeur were in the conspiracy and received large sums for driving the cars which transported the whisky shipped from Pittsburgh to Canton. Lundgren was shown to be in intimate relations with Rudner and his associates, not only getting liquor from them, which he sold to others, but notifying the Rudner group when Rudner's house was about to be raided by officers, and having the stock transferred to his own home. There was also competent and substantial testimony tending to connect Windolf and Morris Rudner with the conspiracy.

4. We find no prejudicial error, if indeed there was any error, in the admission of testimony. The most prominent criticism relates to the admission of the testimony of Wertheimer and Carver as to the active participation by George Nauman in the sales made to those witnesses, which were not connected with the conspiracy in question. The trial court struck out the statement of overt acts relating to purchases by those parties, and instructed the jury that their testimony was not to be considered as evidence of the conspiracy, nor as evidence against any of the defendants on trial except George and Charles Nauman, and as to them only for the purpose of enabling the jury to determine the motive and intent with which they participated (if they did participate) with any of the other defendants upon trial in the conspiracy charged. Plainly no error was committed in respect to this testimony. We see no merit in the criticisms of the other admissions complained of.

5. We find nothing in the charge of the court, or in the refusals to charge, of which plaintiffs in error are entitled to complain. As has already been stated, the court carefully guarded the rights of the defendants, and in that connection gave to the jury a large number of special requests, especially as regards the Naumans, but applied by the court to the remaining defendants. In that connection the jury was advised that it would be unsafe to convict on the uncorroborated evidence of an accomplice, which was all that could be asked. Caminetti v. United States, 242 U. S. 470, 495, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Holmgren v. United States, 217 U. S. 509, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778; Ray v. United States (C. C. A. 6) 265 Fed. 257. We may add that we see no basis for complaint on the charge of variance, having in mind that the prosecution was for conspiracy, not for a series of disconnected offenses, as was the theory of defendants. We find nothing in the proceedings of which we think the plaintiffs in error (unless it be George Nauman) are entitled to complain.

6. The question remains whether verdict should have been directed in favor of George Nauman. There was no testimony that he personally participated in either of the sales to Ben Rudner made at the Nauman garage, in all of which, according to the testimony, Charles Nauman acted, and the jury was instructed that mere knowledge on his part of the existence of the conspiracy, or a passive acquiescence therein or a failure to denounce it, would not justify his conviction. It does not affirmatively appear that his relations to the Nauman garage were other than as employé of Charles. There was, however, testimony of one witness, interpreted by the trial court to mean that upon one occasion, when boxes were being broken open in the garage and whisky taken out and loaded into two cars, and money paid over and cars driven out past the office, George Nauman, who was working generally in the garage, drank beer in the office with the witness; and that on another occasion, when George Nauman passed into the open space of the garage, where boxes were being ripped open with whisky in them, somebody declared (pointing to George Nauman), "There is the boss' brother." It is the opinion of a majority of this court that

there was no competent evidence which would justify the conviction of George Nauman, and that, even if by presenting evidence of good character he may have waived his·motion to direct verdict made at the close of the Government's testimony, this court ought not to overlook such total lack of evidence.

As to him, therefore, the judgment of the District Court is reversed, and the record remanded, with directions to award a new trial. As to each of the other plaintiffs in error, the judgment is affirmed.